[Cite as *State v. Fletcher*, 2017-Ohio-1006.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.   CA2016-08-016 |
| | : | O P I N I O N |
| - vs - | | 3/20/2017 |
| | : | |
| DEANNA FLETCHER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI 2016 2056

Jessica A. Little, Brown County Prosecuting Attorney, Mary McMullen, 510 East State Street, Suite 2, Georgetown, Ohio 45121, for plaintiff-appellee

Joshua R. Crousey, One East Main Street, Amelia, Ohio 45102, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}   Defendant-appellant, Deanna Fletcher, appeals from her conviction in the Brown County Court of Common Pleas for aggravated trafficking in drugs, aggravated possession of drugs, and possession of drugs.  For the reasons set forth below, we affirm in part, reverse in part, and remand the matter for further proceedings.

{¶ 2}   On the evening of February 20, 2016, Michael Dearing, an officer with the Mt. Orab Police Department and an agent with the Brown County Drug and Major Crimes Task

Force, went to the Green Crest Motel in Mt. Orab, Brown County, Ohio. Following a brief interaction with individuals sitting in cars parked in front of Room No. 6 of the motel, Dearing approached Room No. 6 to talk to its occupants. As Dearing approached Room No. 6, he noticed that the door was open approximately 12 inches. Dearing saw a man, later identified as Donnie Fletcher, sitting on a bed next to a stack of money. Dearing knocked on the door jamb, identified himself as a Mt. Orab police officer, and asked the man to come to the door. As the man approached the door, Dearing pushed the door to the motel room completely open. Dearing saw two females in the room, who were later identified as appellant (Donnie's wife) and Dezaraya Fletcher (Donnie and appellant's daughter). Appellant, Donnie, and Dezaraya all spoke with Dearing outside the motel room, and Donnie and appellant – the two individuals living in Room No. 6 – gave Dearing consent to search their motel room and their silver GMC truck.

{¶ 3} Inside the motel room, law enforcement found scales, glass pipes, butane torches, Clonazepam pills, marijuana budder, plastic baggies, miniature plastic cups, a grinder, four cell phones, a gun knife, $630 in cash, methamphetamine totaling over 17 grams, a magazine for a .9 mm handgun, and multiple rounds of different caliber ammunition. Inside the GMC truck, which was parked in front of Room No. 6, law enforcement found a handicap sticker registered to appellant and a bag containing five firearms, ammunition, and a large knife.

{¶ 4} Appellant, Donnie, and Dezaraya were all arrested. Appellant was subsequently indicted on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), a felony of the second degree (count one), one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a felony of the second degree (count two), and one count of possession of the drug Clonazepam in violation of R.C. 2925.11(A), a misdemeanor of the first degree (count three). Counts one and two set forth that the amount

of methamphetamine involved equaled or exceeded five times the bulk amount but was less than fifty times the bulk amount. Counts one and two were each accompanied by a firearm specification under R.C. 2941.141(A) and forfeiture specifications for the money and guns found in the motel room and GMC truck.

{¶ 5} Appellant entered a not guilty plea to the charges. On June 8, 2016, appellant moved to suppress evidence obtained after law enforcements' search of the motel room and GMC truck on the basis that "said searches and seizures were conducted without a warrant, without probable cause, and not incident to a lawful arrest." Appellant specifically alleged that "the officer's entry into the motel and search was unconstitutional and without warrant or merit." Appellant's husband filed a similar motion in his criminal case, and, by agreement of all parties, appellant's case and Donnie's case were consolidated.

{¶ 6} A hearing on appellant's motion to suppress was held on July 13, 2016. At this time, the state presented testimony from Officer Dearing. Dearing explained that on February 20, 2016, he was notified by a fellow officer that a male staying in Room No. 7 of the Green Crest Motel Room had advised of possible narcotics trafficking and narcotics use in Room No. 6. The occupant of Room No. 7 had noticed several people going in and out of Room No. 6 and had smelled the odor of burnt marijuana coming from the room.

{¶ 7} Dearing drove past the Green Crest Motel around 11:00 p.m. on February 20, 2016. At that time, he noticed that there were three vehicles parked in the area of Room No. 6. Two of the vehicles were occupied and running. Dearing explained, "the Green Crest Motel is a commonplace for drug trafficking" and "it's very common, in drug trafficking cases, where subjects will park in – with – have a driver or have somebody else in the vehicle, while the other person goes in and purchases the narcotics."

{¶ 8} Dearing parked his patrol car down the street and walked up to the vehicles parked in front of Room No. 6. The occupants of the first vehicle he stopped at, a Dodge

Dakota, were looking to rent a room. The second vehicle, a silver GMC truck was unoccupied. The occupant of the third vehicle, a Kia Soul, was Daniel Davis. Davis was sitting in the Soul while his girlfriend, Dezaraya, visited her parents in Room No. 6. During Dearing's conversation with Davis, Davis admitted to having narcotics in the vehicle. Dearing called for backup, and Corporal Eric Lang from the Brown County Sheriff's Office arrived on scene. Davis was secured in the back of Lang's patrol car, which was parked within view of Room No. 6.

{¶ 9} Dearing and Lang then approached Room No. 6 to do a "knock and talk." When he was about four-to-five feet away from the door to the room, Dearing noticed the door was open approximately 12 inches. Dearing saw a man, later identified as Donnie, sitting on a bed near a "substantial stack" of money. Dearing knocked on the door jamb of the room, identified himself as an officer, and asked the man to come to the door. According to Dearing, as Donnie walked towards the door, "due to officer safety, and in my training and experience, knowing that when narcotics are involved, there's a good possibility of guns, I pushed the door completely open, so I could see who was behind the door, to make sure that there was no one that was gonna cause – cause harm to myself or Corp. Lang." Once Dearing pushed opened the door, he saw two females, later identified as appellant and Dezaraya, in the room. Appellant was sitting on a second bed, which was closest to the bathroom.

{¶ 10} Also, after pushing open the door, Dearing noticed that the male walking towards him had a tattoo of the name "Joe" on his forearm. Dearing explained that he had been investigating a male subject known as "Joe" since August 2015, as "Joe" had reportedly been trafficking in large amounts of crystal methamphetamine. Dearing also explained that "Joe" was reportedly driving a silver or tan GMC truck.

{¶ 11} Dearing asked all of the room's occupants to step outside and talk with him.

- 4 -

Dearing did not enter the motel room; nor did he see any contraband in the room at this time. After the occupants exited the motel room, Dearing spoke with Donnie. Other officers spoke with appellant and Dezaraya.

{¶ 12} During Dearing's conversation with Donnie, Donnie admitted that there was "a couple grams of methamphetamine" in the motel room. Dearing sought and obtained consent from Donnie and appellant to search their motel room and the GMC truck. Appellant did ask, "what if we don't [consent]" and was advised by Dearing that he would obtain a warrant to search. Thereafter, both Donnie and appellant signed a "Permission to Search" form. Following a search of the motel room and GMC truck, Donnie, appellant, and Dezaraya were arrested and taken to the Mt. Orab Police Department. After being advised of their *Miranda* Rights, and signing a written waiver of such rights, Donnie, appellant, and Dezaraya separately spoke with Dearing.

{¶ 13} The defense presented testimony from Davis. Davis testified that he stayed in the Kia Soul while Dezaraya went in Room No. 6 to visit with her parents. According to Davis, Dezaraya closed the door after entering the motel room. He testified that after he was removed from the Kia and placed in the back of Corporal Lang's patrol car, he could continue to see the door to Room No. 6. Davis maintained that the door to Room No. 6 was closed when law enforcement reached it. Davis testified, "Dearing reached up and grabbed the knob, opened the door, looked in and motioned for 'em to come out." Davis explained he was approximately 50 feet away from the motel room door when he observed Dearing's actions.

{¶ 14} In addition to testimony from Dearing and Davis, the court also accepted as evidence photographs of the various vehicles parked outside of the motel room, a "Permission to Search" form signed by appellant and Donnie, *Miranda* Waiver forms signed by appellant and Donnie, recorded statements that Donnie and appellant separately made to

Dearing, and a portion of Dearing's incident report detailing his observations and actions after approaching the Green Crest Motel on February 20, 2016.

{¶ 15}   The court took the matter under advisement and, on July 25, 2016, issued a decision denying appellant's motion to suppress.  In denying the motion, the court stated, in relevant part, the following:

> Officer Dearing had a legitimate law enforcement objective, investigating narcotic trafficking, to initiate a "knock and talk."
>
> Further, armed with the knowledge of others being in the room with no ability to safely and effectively talk with the male * * * the Officer was reasonable in his limited intrusion of pushing the door more open to ascertain the location of the other occupants to ensure no one had a gun pointed at him.  It is important to note, Dearing did not enter the Motel Room until after consent was obtained.   Officer Dearing's actions did not violate the [appellant's] constitutional rights.

The court further found that appellant's statement to Dearing was "taken only after a free, knowing, and voluntary waiver of [her] Miranda Rights."

{¶ 16}   A bench trial commenced on July 28, 2016.  At this time, the state called as its witnesses Officer Dearing and Corporal Lang.  Dearing's testimony at trial was consistent with his testimony from the motion to suppress hearing.  He described his arrival at the Green Crest Motel, his interaction with Davis in the motel's parking lot, his approach of Room No. 6, and his interaction with appellant, Donnie, and Dezaraya.  Dearing explained that after obtaining appellant's and Donnie's consent to search the motel room, he and other law enforcement officers entered and found evidence of drug possession and trafficking.  In one area of the room, after opening nightstand drawers, a zip-up cooler, and a pink polka-dot bag, officers found four digital scales, a green cup with a white crystal powder inside it, glass pipes, small plastic baggies, miniature red plastic cups, marijuana budder, a Ziploc baggie containing two green pills, a larger plastic baggie containing a substance believed to be crystal methamphetamine ("larger baggie"), a gun knife, and multiple rounds of various caliber

ammunition, including a magazine for a .9 mm handgun. Officers also found and seized from Room No. 6 multiple cans of butane and butane torches, a grinder, a "corner baggie" of a substance believed to be crystal methamphetamine, four different cell phones, $630 from the bed where Donnie was originally sitting, and $280 from appellant's wallet.

{¶ 17} After evidence was collected, Dearing spoke with appellant, Donnie, and Dezaraya at the Mt. Orab Police Department. During Dearing's interview of Donnie, Donnie admitted that he had been using methamphetamine for 20 years and that he buys it in Dayton. Donnie explained that he normally gets one or two grams at a time and stated he "went to get a fucking gram last night." Donnie initially denied that he sold methamphetamine, but admitted that he sometimes gets meth for four or five people. He then stated, "If somebody wants it, I'll go get it. If I can make something off it, I'll do it to get it." He also admitted to "swapping" methamphetamine out with people. He explained he would "swap out" methamphetamine for guitars and cars.

{¶ 18} During Dearing's interview with appellant, appellant admitted she had been using methamphetamine "off and on" for "a long time." Appellant acknowledged that she and Donnie "probably" went to Dayton every two or three days to pick up methamphetamine, but she stated she did not know how much they would pick up and they did not get methamphetamine "every time" they went to Dayton. Appellant denied that she sold methamphetamine to others, but admitted she would drive Donnie when he delivered methamphetamine to others. However, she claimed she did not "always know what we're doing" and that she had to go because Donnie "wouldn't leave [her] at home."

{¶ 19} Dearing testified that some of the evidence seized from Room No. 6 was sent to the Ohio Bureau of Criminal Identification and Investigation ("BCI") for testing. Instrumental analysis and chemical testing of the substances found in the "corner baggie," the "larger baggie," and the green cup demonstrated the substances were methamphetamine, weighing

a combined total of 17.4 grams.[1] Using logo identification markings and instrumental analysis, the two green pills found in Room No. 6 were identified as Clonazepam, a schedule IV drug.

{¶ 20} On cross-examination, Dearing testified that he did not personally observe appellant or Donnie commit a "hand-to-hand" sale of narcotics on February 20, 2016. Nor did he hear either appellant or Donnie offer to sell anyone methamphetamine on February 20, 2016. He further testified that although Donnie admitted to "owning" a .9 mm handgun, one was not found inside Room No. 6.

{¶ 21} Corporal Lang testified about his search of the GMC truck. Inside the truck, he found a handicap bumper sticker belonging to appellant and a bag containing five firearms, ammunition, and a large knife. The firearms, consisting of a Hi-Point .9 mm handgun, a Heritage MFG .22 revolver, a Bryco .380 handgun, a Victor 32 Smith & Wesson revolver, and a Kel-Tac P3AT .380 handgun, were all operable.

{¶ 22} Following Lang's testimony, the state rested its case-in-chief. The trial court accepted the state's exhibits into evidence, which consisted of photographs of the truck and motel room, the drugs and drug paraphernalia collected from the motel room, the firearms and ammunition found at the scene, the "Permission to Search" and "*Miranda* Waiver" forms signed by appellant and Donnie, Donnie's and appellant's recorded statements to Dearing, a BCI Laboratory Report, and a firearm report prepared by Timothy Hubbard, Jr., an officer with the Mt. Orab Police Department. Thereafter, defense counsel made a Crim.R. 29 motion for acquittal. The trial court granted the motion in part, finding that the state failed to present sufficient evidence as to the firearm specifications accompanying counts one and two. In all other respects, appellant's Crim.R. 29 motion was denied.

{¶ 23} Thereafter, appellant called Dezaraya as her sole witness. Dezaraya testified

---

1. The methamphetamine found in the "corner baggie" weighed 1.10 grams, the methamphetamine in the "larger baggie" weighed 14.86 grams, and the methamphetamine in the green cup weighed 1.44 grams.

she pled guilty to aggravated trafficking in drugs as a result of Dearing's February 20, 2016 investigation. Dezaraya claimed that the "larger baggie" of methamphetamine found in Room No. 6 was hers. She stated she had received the methamphetamine "the day before" from Davis. She claimed that she had put the "larger baggie" of methamphetamine in the pink polka-dot bag, carried the bag inside when visiting her parents on a prior occasion, and had left the bag in their motel room. According to Dezaraya, she did not tell anyone else about the methamphetamine in that bag and her intention was to sell that methamphetamine.

{¶ 24} On cross-examination, Dezaraya acknowledged that her testimony at trial did not match the statement she gave to Dearing. When she was interviewed by Dearing after her arrest, she denied knowing that there were any drugs in Room No. 6. Dezaraya never told Dearing that the items in the pink polka-dot bag were hers, and she denied possessing anything found in the motel room. The only methamphetamine she admitted to possessing was the methamphetamine found in a white box inside her Kia Soul. Further, when speaking with Dearing, Dezaraya admitted that her dad sold methamphetamine and that her mom drove the truck.

{¶ 25} Following Dezaraya's testimony, the defense rested. The trial court accepted appellant's exhibits into evidence, which consisted of photographs of evidence collected from Room No. 6 and from a search of the Kia Soul. After closing arguments, the trial court found appellant guilty of aggravated trafficking in drugs, aggravated possession of drugs, and possession of the drug Clonazepam. The court found appellant not guilty on the forfeiture specifications accompanying counts one and two. Appellant was sentenced to two years in prison on counts one and two and to 180 days in jail on count three, all to be served concurrently.

{¶ 26} Appellant timely appealed, raising three assignments of error. For ease of discussion, we will address appellant's second and third assignments or error together.

**MOTION TO SUPPRESS**

{¶ 27}   Assignment of Error No. 1:

{¶ 28}   THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING THE MOTION TO SUPPRESS WHERE THE OFFICER OPENED THE DOOR OF A RESIDENCE WITHOUT OBTAINING A SEARCH WARRANT AND WITHOUT EXIGENT CIRCUMSTANCES COUPLED WITH PROBABLE CAUSE.

{¶ 29}   In her first assignment of error, appellant argues the trial court erred in denying her motion to suppress.  She contends her Fourth Amendment rights were violated when Officer Dearing "broke the threshold" of her home by pushing open the motel room door without a warrant and without the existence of any exigent circumstances.

{¶ 30}   Appellate review of a trial court's denial of a motion to suppress presents a mixed question of law and fact.  *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.  Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility.  *Id.*  Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10.  "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard."  *Cochran* at ¶ 12.

{¶ 31}   The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures."  "A presumption of unreasonableness attaches to all warrantless home entries."  *State v. Young*, 12th Dist. Warren No. CA2014-05-074, 2015-Ohio-1347, ¶ 17, citing *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091 (1984).  However, "[w]hen law enforcement

- 10 -

officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469, 131 S.Ct. 1849 (2011). A "knock and talk" by law enforcement is a "permissible warrantless intrusion" that does not require "any objective level of suspicion." *Young* at ¶ 24, quoting *Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 Fed. Appx. 492, 499 (6th Cir.2011).

{¶ 32} In the present case, Dearing's actions in approaching the already-open motel room door where appellant was residing and knocking on the door jamb was lawful. *See King*. The question then becomes whether Dearing's action of further opening the motel room door violated appellant's Fourth Amendment rights.

{¶ 33} "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371 (1980). *See also Hoffa v. United States*, 385 U.S. 293, 301, 87 S.Ct. 408 (1966) (noting that the protection against warrantless search and seizures also applies to hotel rooms). Under the exigent circumstances exception to the warrant requirement, "the exigencies of [a] situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 393-394, 98 S.Ct. 2408 (1978). This exception justifies a warrantless entry into a residence in certain situations, including when entry is necessary to protect the safety and well-being of police officers or others. *See, e.g., Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093 (1990); *United States v. Williams*, 354 F.3d 497, 503 (6th Cir.2003).

{¶ 34} "The exigent circumstances doctrine requires probable cause plus exigent circumstances to effectuate a warrantless entry of [a] home." *State v. Wilson*, 12th Dist. Clinton No. CA2006-03-008, 2007-Ohio-353, ¶ 22. "'Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that [an] offense has

been committed.'" *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 73, quoting *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168 (1959). In determining whether probable cause exists, a court must look at the "totality of the circumstances." *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 16. Probable cause is viewed under an objective standard. *State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 14.

{¶ 35} In the present case, after viewing the totality of the circumstances known by Dearing at the time he pushed open the motel room door, we find that there was probable cause and the existence of exigent circumstances. Moreover, we find that Dearing's action in further pushing open the motel room door was reasonable and not a violation of appellant's Fourth Amendment rights as the need for the intrusion into the motel room to protect the officers' safety far outweighed the slight invasion the visual search entailed. *See, e.g., Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943 (2006) (recognizing that the "ultimate touchtone of the Fourth Amendment is 'reasonableness'" and finding law enforcement's entry into a home without a warrant to offer assistance to an injured occupant was not in violation of the Fourth Amendment); *State v. Nelson*, 1st Dist. Hamilton No. C-150650, 2016-Ohio-5344, ¶ 17 (recognizing that "[w]here concerns of officer safety are present, [courts have] measured reasonableness by balancing the need for the search against the invasion the search entails").

{¶ 36} Dearing articulated a number of facts giving rise to probable cause and demonstrating that the slight invasion of the motel room was warranted.[2] He explained that

---

2. In support of her contention that law enforcement lacked probable cause, appellant relies on Dearing's statement at the motion to suppress hearing that "there wasn't enough information to gain a search warrant" when he first approached Room No. 6. However, Dearing's testimony related to why a search warrant was not obtained after the initial tip from the occupant of Room No. 7 was received. Dearing's testimony did not address the additional facts giving rise to probable cause that were discovered after Dearing's arrival at the Green Crest Motel. Considering all the facts known to Dearing at the time he pushed open the motel room door, we find probable cause existed.

he was investigating possible narcotics use and trafficking out of Room No. 6 based off of a tip by another resident of the motel, that the Green Crest Motel is known for drug trafficking, and that running and occupied cars, like those parked outside of Room No. 6, are a common occurrence in drug trafficking cases. Dearing had spoken to Davis, a passenger in one of the running cars who admitted to possessing crystal methamphetamine, and obtained information that Davis' girlfriend was visiting with her parents in Room No. 6. When Davis approached Room No. 6, he could only see one of the room's occupants through the slightly opened door. This individual was sitting beside a large pile of money. These facts, when taken as a whole, give rise to probable cause.

{¶ 37} Additionally, Dearing's testimony demonstrates that exigent circumstances existed at the time he pushed open the motel room door. Dearing explained that he pushed open the door to ensure his and Corporal Lang's safety. Specifically, he stated, "due to officer safety, and in my training and experience, knowing that when narcotics are involved, there's a good possibility of guns, I pushed the door completely open, so I could see who was behind the door, to make sure that there was no one that was gonna cause – cause harm to myself or Corp. Lang. * * * [T]he whole reason I'm opening the door, is because I wanna see if there's somebody standing behind there with a gun that's about to shoot me."

{¶ 38} Dearing's intrusion into the room was slight. He pushed the door open and visually scanned the room to make sure no occupants were holding a firearm or posed a threat to his and Lang's safety. Dearing did not physically enter the motel room at this time. Rather, he asked all occupants to step outside the room and speak with him, and waited until he had appellant's and Donnie's consent before searching the room.

{¶ 39} Accordingly, under the circumstances presented in this case, we find the existence of probable cause and exigent circumstances. Dearing's actions in further opening the motel room door to ascertain the whereabouts of the room's occupants so as to protect his

and his fellow officer's safety did not violate appellant's Fourth Amendment rights. Dearing's actions were reasonable, and his minimal intrusion into the motel room was strictly limited to the exigency that existed. *See, e.g., State v. Barber*, 2d Dist. Montgomery No. 19017, 2002-Ohio-3278, ¶ 17 ("While the Fourth Amendment requires that residential thresholds and the sanctity of the home be respected, that is reasonably overcome by threats to the officer's safety that a suspect's conduct creates").

**{¶ 40}** Further, we note that the physical evidence in this case was obtained only after appellant and Donnie freely and voluntarily consented to a search of their motel room. Dearing's visual scan of the room did not result in any contraband or evidence being observed in plain view. It was only after appellant and Donnie gave written consent for the room to be searched that officers physically entered the room and evidence of trafficking in drugs and possession of drugs was found. Consent to search is a recognized exception to the warrant requirement, and the record before us is devoid of any evidence indicating that appellant's or Donnie's consent to the search was involuntary. *State v. Christopher*, 2010-Ohio-1816 at ¶ 42; *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041 (1973).

**{¶ 41}** Accordingly, for the reasons set forth above, we find no error in the trial court's denial of appellant's motion to suppress. Appellant's first assignment of error is overruled.

### SUFFICIENCY AND MANIFEST WEIGHT

**{¶ 42}** Assignment of Error No. 2:

**{¶ 43}** THE COURT ERRED BY FINDING APPELLANT GUILTY WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION.

**{¶ 44}** Assignment of Error No. 3:

**{¶ 45}** THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

**{¶ 46}** In her second and third assignments of error, appellant argues her convictions for aggravated trafficking in methamphetamine, aggravated possession of methamphetamine,

and possession of the drug Clonazepam are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 47} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 48} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court,

therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 49} Although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. *See also State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43 ("a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency").

**Count One: Trafficking in Methamphetamine**

{¶ 50} Appellant was convicted of complicity to trafficking in methamphetamine. "A charge of complicity may be stated in terms of [the complicity statute] or in terms of the principal offense." R.C. 2923.03(F). This statute provides adequate notice that complicity may be contemplated even where the indictment is phrased as if the defendant were the principal offender. *State v. Herring*, 94 Ohio St.3d 246, 251 (2002); *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 20. "Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is stated in terms of the principal offense and does not mention complicity." *State v. Himes*, 7th Dist. Mahoning No. 08 MA 146, 2009-Ohio-6406, ¶ 25, citing *Herring* at 251.

{¶ 51} R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or controlled substance analog is intended for sale or

- 16 -

resale by the offender or another person." Where "the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking in drugs is a felony of the second degree." R.C. 2925.03(C)(1)(d).[3]

{¶ 52} According to the complicity statute, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). A person must act "knowingly" to traffic in drugs. R.C. 2925.03(A)(2). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 53} To be complicit to a crime by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "[A] person's mere association with a principal offender is not enough to sustain a conviction based upon aiding and abetting." *State v. Coldiron*, 12th Dist. Clermont Nos. CA2003-09-078 and CA2003-09-079, 2004-Ohio-5651, ¶ 17. The accused "must actively participate in some way and contribute to the unlawful act to aid or to abet." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 49, citing *State v. Salyer*, 12th Dist. Warren No. CA2006-03-039, 2007-Ohio-1659, ¶ 27. Aiding and abetting may be shown through either direct or circumstantial evidence, and "'participation in criminal intent may be inferred from the presence, companionship, and conduct before and after the offense is committed.'" *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 19, quoting *State v. Lett*, 160 Ohio App.3d 46, 2005-Ohio-1308, ¶ 29 (8th Dist.).

---

3. Pursuant to R.C. 3719.41, methamphetamine is a schedule II controlled substance. The bulk amount of a controlled substance containing any amount of a schedule II stimulant is three grams. R.C. 2925.01(D)(1)(g).

{¶ 54}　After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find appellant's conviction for aggravated trafficking in methamphetamine is supported by sufficient evidence and is not against the weight of the evidence.　The state presented testimony and evidence from which the jury could have found all the essential elements of the offense proven beyond a reasonable doubt.　The state introduced evidence that items commonly used to prepare drugs for sale were found throughout the motel room appellant shared with her husband.　In addition to the 17.4 grams of methamphetamine found in the motel room, officers discovered dozens of empty plastic baggies, digital scales, small plastic cups, and four cell phones.　Appellant's husband admitted to buying large quantities of crystal methamphetamine in Dayton and then selling the drug to "make something off it" or trading the drug for goods.　He further admitted to buying methamphetamine the night before he was arrested at the Green Crest Motel.

{¶ 55}　Donnie also stated that he and appellant were "together all the time" and that she knew about the methamphetamine.　Appellant admitted to driving Donnie up to Dayton to get the drug.　She stated, "Most of the time I drove.　I drove the car all the time."　She further admitted she would drive Donnie when he delivered methamphetamine, although she claimed she didn't "always know what [they were] doing."

{¶ 56}　Based on the forgoing evidence, the trier of fact was entitled to find appellant guilty of complicity to aggravated trafficking in methamphetamine in an amount that exceeds five times the bulk amount but is less than fifty times the bulk amount.　The state presented credible evidence that appellant actively participated in her husband's trafficking by driving him to purchase the methamphetamine and driving him when he sold or traded the methamphetamine.　In finding appellant guilty, the trier of fact was entitled to discredit appellant's defense that she was not traveling with her husband to aid him in committing the offense, but rather to "keep the peace" in her marriage.　Appellant's conviction under count

one is, therefore, supported by sufficient evidence and is not against the weight of the evidence.

**Count Two: Possession of Methamphetamine**

{¶ 57} Appellant also challenges her conviction for aggravated possession of methamphetamine. R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Where the "amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree." R.C. 2925.11(C)(1)(c).

{¶ 58} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Fultz*, 12th Dist. Butler No. CA2015-06-103, 2016-Ohio-1486, ¶ 12. Constructive possession exits when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 22. "Constructive possession may be proven by circumstantial evidence alone." *Fultz* at ¶ 12. Absent a defendant's admission, the surrounding facts and circumstances, including a defendant's actions, are evidence that a trier of fact may consider in determining whether the defendant had constructive possession. *Graves* at ¶ 22. "The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs." *Fultz* at ¶ 13. "[T]wo or more persons may have possession of an object together if they have the ability to control it, exclusive of others." *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 44.

{¶ 59} As stated above, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Further, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." *Id.*

{¶ 60} In the present case, the state presented ample evidence demonstrating that appellant knowingly possessed methamphetamine, a schedule II controlled substance, in an amount exceeding five times the bulk amount but less than fifty times the bulk amount. Dearing testified that 17.4 grams of methamphetamine was found in the motel room appellant shared with her husband. Although appellant argues the drugs were found on her husband's "half of the room," Dearing's testimony demonstrated that evidence was recovered throughout the entire room. Methamphetamine was found in three different locations in the room – inside a cooler near a chair, in a green cup on the nightstand, and in a black bag in a dresser drawer. Additionally, paraphernalia commonly used for smoking methamphetamine, such as pipes and butane torches, were found scattered throughout the entire room. This evidence, combined with appellant's admission that she used methamphetamine "off and on" and drove her husband to purchase and deliver methamphetamine, are sufficient to demonstrate appellant knowingly exercised control over the drug. Appellant's conviction under count two is, therefore, supported by sufficient evidence and is not against the weight of the evidence.

### Count Three: Possession of Clonazepam

{¶ 61} Finally, appellant challenges her conviction for possession of the drug Clonazepam. As stated above, a person who "knowingly obtain[s], possess[es], or use[s] a controlled substance or controlled substance analogue" is guilty of possession of drugs. R.C. 2925.11(A). The state presented evidence that two green pills found in appellant's motel room were tested by BCI and found to be Clonazepam, a schedule IV controlled substance. These drugs were found in the same cooler that contained the larger bag of

methamphetamine that appellant knowingly possessed. As the Clonazepam was readily accessible by appellant and subject to her control, we find that her conviction under count three is supported by sufficient evidence and is not against the weight of the evidence.

{¶ 62} Appellant's second and third assignments of error are, therefore, overruled.

## PLAIN ERROR – ALLIED OFFENSES

{¶ 63} On appeal, appellant did not assign as error the trial court's failure to merge her aggravated trafficking in drugs offense with her aggravated possession of drugs offense.[4] However, it is within this court's discretion to sua sponte consider whether the trial court committed plain error in failing to merge the offenses. *State v. Blanda*, 12th Dist. Butler No. CA2010-03-050, 2011-Ohio-411, ¶ 20. Plain error exists where there is an obvious deviation from a legal rule which affected the outcome of the proceeding. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), citing Crim.R. 52(B). The Ohio Supreme Court has recognized that the imposition of multiple sentences for allied offenses of similar import amounts to plain error under Crim.R. 52(B). *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶ 64} R.C. 2941.25, Ohio's multiple-count statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the

---

4. {¶ a} In arguing that the state presented insufficient evidence to support her conviction for aggravated trafficking in drugs, appellant does state the following:

{¶ b} Finally, the amount of the methamphetamine found was 14.8 grams. * * * That amount was less than 5 times the bulk amount. The corner baggie of 1.10 grams of methamphetamine could not have been considered by the trier of fact in this count, as the court also found her guilty of possessing methamphetamine in count 2 and did not merge the offenses. * * * We must then presume that the Court found that one baggie constituted the trafficking and another baggie supported the claim of possession.

{¶ c} However, in convicting appellant of aggravated trafficking in drugs in an amount more than five times the bulk amount and aggravated possession of drugs in an amount more five times the bulk amount, the trial court was entitled to rely on the aggregate weight of all the methamphetamine found in Room No. 6. Combining the weight of the "larger baggie" of methamphetamine (14.86 grams) with either, or both, the "corner baggie" of methamphetamine (1.10 grams) or the methamphetamine found in the green cup (1.44 grams) sufficiently established appellant possessed and trafficked in methamphetamine in more than five times the bulk amount for purposes of her convictions.

indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

"R.C. 2941.25(A)'s mandate that a defendant may be 'convicted' of only one allied offense is a protection against multiple sentences, rather than multiple convictions." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 18. "Thus, to ensure that there are not improper cumulative punishments for allied offenses, courts must be cognizant that R.C. 2941.25(A) requires that 'the trial court effects the merger at sentencing.'" *Id.*, quoting *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 135.

{¶ 65} In determining whether offenses are allied and should be merged for sentencing, courts are instructed to consider three separate factors – the conduct, the animus, and the import. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. Offenses do not merge and a defendant may be convicted and sentenced for multiple offenses if *any* of the following are true: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus and ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

{¶ 66} We find that the trial court committed plain error when it failed to merge appellant's convictions for aggravated trafficking in drugs and aggravated possession of drugs. Under the facts presented in this case, the two offenses are similar in import, were committed with the same animus, and were not committed separately. Significantly, the

same methamphetamine found in appellant's motel room formed the basis for each offense. The state did not present evidence that appellant possessed a distinct amount of methamphetamine with a separate animus from trafficking in that drug. Accordingly, we find that the offenses should have been merged as allied offenses of similar import. *See, e.g., State v. Bradley*, 8th Dist. Cuyahoga No. 102727, 2015-Ohio-5421, ¶ 39-42; *State v. Westbrook*, 4th Dist. Scioto No. 09CA3277, 2010-Ohio-2692, ¶ 5.

**{¶ 67}** Therefore, insofar as the trial court failed to merge appellant's convictions for aggravated trafficking in drugs and aggravated possession of drugs, the judgment of the trial court is reversed and the matter is remanded for resentencing. Upon remand, the state can elect which allied offense to pursue, and the trial court must accept the state's choice and merge the crimes into a single conviction for sentencing. *Whitfield*, 2010-Ohio-2 at ¶ 20, 24; *State v. Ozevin*, 12th Dist. Clermont No. CA2012-06-044, 2013-Ohio-1386, ¶ 16.

**{¶ 68}** Judgment affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this opinion.

PIPER and M. POWELL, JJ., concur.