[Cite as *State v. Jones*, 2017-Ohio-7019.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-10-194 |
| | : | O P I N I O N |
| - vs - | | 7/31/2017 |
| | : | |
| JAMAL V. JONES, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2015-11-1771


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for defendant-appellant


**PIPER, J.**

{¶ 1} Defendant-appellant, Jamal Jones, appeals his convictions in the Butler County Court of Common Pleas for possession of marijuana and forgery.

{¶ 2} A manager at a Family Dollar store accepted a $100 bill from a female and male customer to pay for their collective purchase. The manager checked the authenticity of the bill by drawing on it with a marker that indicates whether the currency is authentic. While

the marker indicated that the bill was legitimate, the store's bank later informed the manager that the bill was counterfeit. The store manager contacted the police, and an officer reviewed the store's video surveillance.

{¶ 3} A few days later, the same female customer returned to the Family Dollar store. She attempted to pay for her items with a $100 bill, and this time, the manager refused to accept it. After the female customer left the store, the manager followed her into the parking lot and recorded the license plate number of the female customer's car. The manager contacted police, and the same officer who had viewed the video ran the license plate number. The car was licensed to Dena Acklin-Byrd Jones.

{¶ 4} A detective who investigated the matter obtained an address from the license plate registration and matched the address with an apartment belonging to Dena and Jones. Police later performed a stop of Dena's vehicle, in which Jones was a passenger, and transported Jones and Dena to the Middletown Police Department. Jones then made a statement to police that a customer had used counterfeit bills to pay for a drug purchase, and that he and Dena were using the counterfeit bills to make up for the money they lost as a result of the sale.

{¶ 5} Officers later conducted an inventory search of Dena's vehicle and located a large bag of marijuana in a backpack in the back seat of the car. Police also located other counterfeit bills in Dena's purse. A search warrant was executed in Jones' home, and police located more marijuana. Jones and Dena were arrested, and Jones was indicted for forgery and marijuana possession. Jones pled not guilty to the charges, and later filed a motion to suppress his statements, as well as the evidence seized because of the stop and search warrant. After a hearing on the matter, the trial court denied Jones' motion, and the matter proceeded to a two-day trial.

{¶ 6} During the trial, Dena testified that Jones had no knowledge of the marijuana or

the counterfeit bills, and that she was holding the marijuana in hopes that Ohio would legalize marijuana so she could operate a dispensary. Jones testified in his own defense, and recanted the statement he made to police. Instead, Jones testified that he made up his statement to protect Dena, and that he had no knowledge of the drugs or counterfeit money.

{¶ 7} The jury found Jones guilty of forgery and drug possession. The trial court sentenced Jones to 11 months on the marijuana possession charge and nine months on the forgery charge. The trial court ordered the sentences to run consecutively for an aggregate sentence of 20 months. Jones now appeals his convictions, raising the following assignment of error.

{¶ 8} MR. JONES' CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 9} Jones argues in his sole assignment of error that his convictions were against the manifest weight of the evidence.

{¶ 10} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66.

{¶ 11} "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, these issues are primarily matters for the trier of fact to decide." *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶

81. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*

{¶ 12} Jones was convicted of possession of marijuana in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." According to R.C. 2925.01(K), possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession includes actual or constructive possession of the substance. *State v. Williams*, 12th Dist. Butler No. CA2014-09-180, 2015-Ohio-2010, ¶ 14.

{¶ 13} "An accused has 'constructive possession' of an item when the accused is conscious of the item's presence and is able to exercise dominion and control over it, even if the item is not within the accused's immediate physical possession." *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 25. A person may knowingly possess or control property belonging to another, and the state need not establish ownership to prove constructive possession. *Williams* at ¶ 14. Constructive possession may be proven by circumstantial evidence alone. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 45. The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs. *Williams*.

{¶ 14} Jones was also convicted of forgery in violation of R.C. 2913.31(A)(3), which provides, "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following: Utter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2923.03(A)(2), Ohio's complicity statute,

criminalizes aiding or abetting another in committing an offense when that person acts with the kind of culpability required for the commission of an offense.

{¶ 15} To be complicit to a crime by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 2001-Ohio-1336, syllabus. "[A] person's mere association with a principal offender is not enough to sustain a conviction based upon aiding and abetting." *State v. Coldiron*, 12th Dist. Clermont Nos. CA2003-09-078 and CA2003-09-079, 2004-Ohio-5651, ¶ 17. The accused "must actively participate in some way and contribute to the unlawful act to aid or to abet." *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 49. "Aiding and abetting may be shown through either direct or circumstantial evidence, and participation in criminal intent may be inferred from the presence, companionship, and conduct before and after the offense is committed." *State v. Fletcher*, 12th Dist. Brown No. CA2016-08-016, 2017-Ohio-1006, ¶ 53.

{¶ 16} During the trial, the jury heard evidence that Jones possessed marijuana and was complicit in defrauding the Family Dollar store by using a counterfeit bill to pay for his and Dena's purchase. The state first presented testimony from the bank teller who testified that she located the $100 counterfeit bill when she was processing the deposits from the Family Dollar store. The teller testified that she noticed the bill was missing a security marker, and that it seemed faded and off-color from the rest of the genuine $100 bills. Once the teller informed her manager, the two ran the bill through a machine, which indicated that it was counterfeit. The two then reported the incident to the Secret Service, as well as the Family Dollar manager.

{¶ 17} The Family Dollar manager testified that when she accepted the bill from a female and male customer, she felt that "something wasn't right," but that the counterfeit

marker she used to test the authenticity did not indicate that the bill was counterfeit. The manager testified that after the bank informed her of the counterfeit bill, she reviewed security footage from the store's camera, and verified that the only $100 bill she accepted that day was from the female and male customer from whom she remembered taking the bill. The manger testified that she then called the police department and reported the incident.

{¶ 18} The manager also testified that a few days after being informed by the bank of the counterfeit bill, the same female customer returned to the store, and tried to use another $100 bill for her purchase. The manager recognized the woman, told her that she would not accept the bill, and called police to report that she obtained the woman's license plate number after following her to the parking lot.

{¶ 19} The jury then viewed the store surveillance video taken on the day the manager accepted the $100 bill, which showed the manager taking the $100 bill from the female customer and returning the change to Jones.

{¶ 20} The jury also heard testimony from a police officer who went to the Family Dollar store when the manager called police to report the counterfeit $100 bill. The officer testified that he viewed the surveillance video, confirmed with the bank that the bill was counterfeit, and that he ran the license plate number later given to him by the store manager. The officer then turned over all information to a detective on the police force who continued the investigation.

{¶ 21} The officer also testified that he was involved in the stop of Dena's car, and that Jones was a passenger in the car at the time of the stop. The officer testified that he helped perform an inventory of the car, and that officers found a backpack in the back seat that contained almost a pound of marijuana. Another officer was called to testify for the state and indicated that more counterfeit bills were discovered in Dena's purse during the inventory.

{¶ 22} The detective who investigated the counterfeit bill also testified, and indicated that a search warrant was executed at the home of Dena and Jones and that police found large quantities of marijuana in the home, including compressed bags of marijuana in pillows on Dena and Jones' bed and a jar of marijuana on a shelf in an alcove area leading into the bathroom.

{¶ 23} The detective then interviewed Jones as part of the investigation, and a recording of the interview was played to the jury. On the recording, Jones told police that he wanted to be straightforward with them, and that he and Dena had sold marijuana and received the counterfeit bills as payment. Jones then told police that he and Dena used the counterfeit bills because they had to earn their money back from the marijuana sale. The state rested its case.

{¶ 24} Dena testified on behalf of Jones, and stated that she kept large amounts of marijuana in her home because she was hoping to open a medical marijuana dispensary once it became legal in Ohio. Dena testified that Jones did not know about the marijuana, that she hid various bags and containers of marijuana in her home, and that Jones never noticed the marijuana or knew it was there. Dena also testified that she, not Jones, possessed the counterfeit bills.

{¶ 25} Jones testified in his own defense, and claimed that he did not have any knowledge that the $100 bill was counterfeit. Jones also testified that he had no knowledge of the marijuana in his home or car, and that he had only moved in with Dena 30 days before his arrest. He also testified that the statement he made to police was an attempt to protect Dena and also to try and avoid incarceration by cooperating with police.

{¶ 26} After hearing the evidence and considering the testimony, the jury found Jones guilty of possession of marijuana and forgery. While Dena and Jones both indicated that only Dena possessed the marijuana and used the counterfeit bill, the jury was in the best

position to judge the credibility of the witnesses, and we will not disturb the jury's finding that Dena and Jones lacked credibility.

{¶ 27} Based on the evidence and testimony, we cannot say that the jury clearly lost its way or created such a manifest miscarriage of justice that Jones' convictions must be reversed and a new trial ordered. Instead, the video taken from the Family Dollar, Jones' confession, as well as testimony from the state's witnesses demonstrate that Jones possessed marijuana given that the marijuana was located within pillows on his bed, within the alcove leading to the bathroom, and in the back seat of the car. Jones had dominion and control over these areas, and the circumstantial evidence demonstrates Jones' knowledge of the drugs in his home and in the car. Jones thus maintained constructive possession of the marijuana.

{¶ 28} Jones was also complicit in defrauding Family Dollar by using the counterfeit $100 bill. Jones shopping with Dena, being at the register when the bill was exchanged, and accepting the change from the manager demonstrated his participation in the transaction, which was more than mere association with Dena. As such, Jones' convictions were not against the manifest weight of the evidence, and his assignment of error is overruled.

{¶ 29} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.