[Cite as *State v. Turner*, 2020-Ohio-1548.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-05-005 |
| | : | O P I N I O N |
| - vs - | | 4/20/2020 |
| | : | |
| JONATHAN W. TURNER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case Nos. CRI2018-2003 and CRI2018-2077

Zachary A. Corbin, Brown County Prosecuting Attorney, Mary McMullen, 740 Mt. Orab Pike, Suite 1, Georgetown, Ohio 45121, for appellee

Law Office of Eric E. Willison, Eric E. Willison, 4876 Cemetery Road, Hilliard, Ohio 43026, for appellant

**PIPER, J.**

{¶1} Appellant, Jonathan Turner, appeals his convictions in the Brown County Court of Common Pleas for multiple counts of rape, gross sexual imposition, and felonious assault.

{¶2} Turner lived with his girlfriend ("Mother"), who had four children. Mother worked second shift, and Turner watched the children while Mother was at work. Turner began sexually abusing one of Mother's children, L.W., who was seven years old at the

time. The sexual abuse ended three years later when Turner left the home. After Turner moved out of the home, L.W. told Mother and a school guidance counselor about the abuse.

{¶3} Mother called 9-1-1 twice to report the abuse, but police did not come to her home. Mother then went to the Brown County Sherriff's Office to report the abuse and detectives began an investigation. Mother gave the detectives several pairs of the child's panties, some of which she found buried beneath a pile of laundry in her home and some of which were found under the child's bed in L.W.'s bedroom.

{¶4} Mother also took the child to the Mayerson Center for Safe and Healthy Children and reported the abuse to the Brown County Department of Job and Family Services. Mother further obtained a protection order against Turner.

{¶5} The child's panties were tested as part of the police investigation, and 15 pairs of the panties testified positive for semen. Turner's DNA was a match for the semen found on the panties, and on some pairs, Turner's DNA was mixed with L.W.'s. The police also interviewed witnesses. Mother and one of her sons told officers that at different times, they had found L.W. locked in her bedroom with Turner, that L.W. would sit on Turner's lap, and that L.W. had bled from her vagina before the child began menstruating. The child's guidance counselor relayed that the child had been suffering from anxiety, was withdrawn and isolated, and began having panic attacks at school; once immediately after a math problem that included the name, "Jon." The child also talked of self-harm and cutting herself and was ultimately diagnosed with post-traumatic stress disorder ("PTSD").

{¶6} Turner was indicted for four counts of rape, three counts of gross sexual imposition, and, in a related case, felonious assault based on L.W.'s PTSD. The cases were consolidated, and Turner pled not guilty. A jury trial was scheduled for November 13, 2018 but not enough potential jurors reported, and the court declared a mistrial. Upon agreement of the parties, the trial court rescheduled trial for April 8, 2019.

{¶7} From the time of his arrest, Turner remained incarcerated and unable to post bail. Three days before the trial date, Turner filed a motion to dismiss on speedy trial grounds. On the first day of trial, the court denied Turner's motion to dismiss and the matter proceeded. The jury found Turner guilty on all counts. The trial court sentenced Turner to an aggregate sentence of life in prison without the possibility of parole. Turner now appeals his convictions, raising the following assignments of error for review.

{¶8} Assignment of Error No. 1:

{¶9} THE TRIAL COURT ERRED WHEN IT ALLOWED APPELLEE TO REDACT ITS POLICE INTERVIEW OF APPELLANT TO EXCLUDE ANSWERS SHOWING APPELLANT'S WILLINGNESS TO TAKE A POLYGRAPH EXAMINATION AND THEN SHOWED THE INCOMPLETE VIDEO TO THE JURY.

{¶10} Turner argues in his first assignment of error that the trial court erred in allowing the state to redact questions and answers from Turner's videotaped police interview related to Turner's willingness to take a polygraph test.

{¶11} A trial court's decision to admit or exclude evidence will not be reversed by a reviewing court absent an abuse of discretion. *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, ¶ 42. An abuse of discretion implies more than an error of law or judgment; it suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Babyak*, 12th Dist. Madison No. CA2019-08-025, 2020-Ohio-325, ¶ 11.

{¶12} Evidence regarding polygraph tests is generally excluded unless the prosecution and defense jointly stipulate in writing to its admissibility, and the court in its sound discretion decides to accept such evidence. *State v. Fulton*, 12th Dist. Clermont No. CA2002-10-085, 2003-Ohio-5432, ¶ 17. This is true because "such tests have not been recognized by the scientific community as being a reliable method for determining the

veracity of the examinee." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2008-Ohio-774, ¶ 87.

{¶13} Moreover, "a defendant's professed willingness to submit to a polygraph test is inadmissible and testimony concerning it can constitute prejudicial error." *State v. Banner*, 8th Dist. Cuyahoga No. 94078, 2010-Ohio-5592, ¶ 22. *See also State v. Raypole*, 12th Dist. Fayette No. 80-CA-6, 1981 Ohio App. LEXIS 14286 (July 1, 1981) (affirming trial court's decision to exclude a question asking whether the witness had agreed to submit to a polygraph examination).

{¶14} The record indicates that during a police interview, detectives asked Turner how and why his DNA was found on the child's panties. Turner tried to explain the presence of his DNA and during the discussion, the detectives asked Turner if he was willing to submit to a polygraph examination. Turner answered "yes." During trial, the trial court admitted the videotaped interview, but reference to the polygraph examination and Turner's willingness to take one was redacted.

{¶15} The law is clear in Ohio that polygraph examinations are generally distrusted, and evidence related to their use is exceptionally limited. This is especially true where the purported evidence is only a question regarding one's willingness to submit to an examination and one's answer regarding that willingness. Had the jury heard the question and answer, but were not provided the result of such examination, there is little doubt that the jury would have speculated as to the results and why such were not provided during trial.

{¶16} Even if some probative value had been inherent in Turner's willingness to submit to a polygraph examination, any value would have been substantially outweighed by the prejudicial impact of the results not being admitted and the resulting speculation from the jury. *See State v. Hamon*, 5th Dist. Delaware No. 12 CAA 12 0089, 2015-Ohio-887, ¶

22 (noting that polygraph examination results do "not have the accuracy entitling it to admission in evidence. It follows that a refusal or willingness to take a test of which the result would have been without value in evidence, likewise has no value for the fact finder").

{¶17} We find that the trial court did not abuse its discretion by refusing to admit evidence of Turner's willingness to take the polygraph exam. Thus, Turner's first assignment of error is overruled.

{¶18} Assignment of Error No. 2:

{¶19} THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE APPELLANT'S MOTION TO DISMISS ON SPEEDY TRIAL ACT GROUNDS.

{¶20} Turner argues in his second assignment of error that the trial court erred in denying his motion to dismiss on speedy trial grounds.

{¶21} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee the right to a speedy trial. The statutory speedy trial provisions set forth within R.C. 2945.71 are coextensive with the constitutional speedy trial provisions. *State v. King*, 70 Ohio St.3d 158, 160 (1994).

{¶22} According to R.C. 2945.71(C)(2), "[a] person against whom a charge of felony is pending * * *[s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.91(E) further provides, "for purposes of computing time * * * each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."

{¶23} When an appellant raises a violation of a speedy trial issue, an appellate court must compute a "try-by date." *State v. Watkins*, 12th Dist. Warren No. CA2013-02-017, 2014-Ohio-177, ¶ 13. The court of appeals must count the days of delay chargeable to either side and determine whether the case was tried within the statutory time limits. *State v. McCaleb*, 12th Dist. Warren No. CA2016-12-103, 2017-Ohio-6944, ¶ 9. R.C. 2945.72(H)

extends the time within which the defendant must be brought to trial for the period of any continuance granted on the defendant's own motion, and the period of any reasonable continuance granted other than upon the defendant's own motion. For example, a trial court's crowded docket is a reasonable basis necessitating a continuance under R.C. 2945.72(H). *State v. Noble,* 12th Dist. Clinton No. CA2007-03-008, 2008-Ohio-355, ¶ 11.

{¶24} According to the record, the original trial commenced on November 13, 2018. The parties began voir dire, and soon realized, based on their intention to execute challenges to some of the jurors who reported, that there were not enough potential jurors to continue. The parties agreed on record that there was not a possibility that a jury could be empaneled, and also agreed that the trial court should declare a mistrial.

{¶25} The parties and trial court then engaged in discussions regarding a retrial date. The parties recommended that the trial could take up to five days, and the court offered a trial date that was rejected by defense counsel because of that date occurring during the spring break of his children. The trial court then suggested a second trial date, and the parties agreed to that trial date of April 8, 2019. The court then specifically continued the case until the agreed-upon trial date, and noted that such was the first available trial date "so there's no speedy trial time." At no point did Turner object or question whether the continuance was necessary or reasonable.

{¶26} The record clearly indicates that the trial court reasonably continued the trial given an inability to seat a jury on the initial trial date. The record also clearly indicates that the trial court, with express input from the parties, chose the first available trial date based on its docket and the need for a five-day jury trial. The reasonableness of the trial court's continuance is aided by the fact that the trial court rescheduled Turner's trial immediately upon learning of the inability to seat a jury so that the retrial could occur at the first possible opportunity.

{¶27} After reviewing the record, we find the time between the original trial and eventual trial was tolled and Turner was tried within the prescribed timeframe required by statute. Thus, Turner's speedy trial rights were not violated, and his second assignment of error is overruled.

{¶28} Assignment of Error No. 3:

{¶29} THE TRIAL COURT ERRED WHEN IT REPEATEDLY ALLOWED THE ADMISSION OF HEARSAY EVIDENCE.

{¶30} Turner argues in his final assignment of error that the trial court erred in admitting hearsay testimony.

{¶31} As noted above, the admission of evidence rests within the trial court's discretion and such decisions will not be reversed absent an abuse of discretion. *State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is inadmissible unless it falls within one of the enumerated exceptions in the rules or is otherwise excepted. *State v. Villani*, 12th Dist. Butler No. CA2018-04-080, 2019-Ohio-1831, ¶ 22.

A. Child's Statement Regarding Abuse

{¶32} Turner first challenges the admission of the child's statement to Mother regarding Turner's abuse. "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." *State v. Thomas*, 61 Ohio St.2d 223, 232 (1980). A statement is not hearsay when introduced to show its effect on the listener. *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 122.

{¶33} The record indicates that the child made a statement to Mother that Turner had sexually abused her. Mother testified that after hearing the child's statement, she called

9-1-1 given the child's allegation of abuse and called again when police did not respond. Also, based on the child's statement regarding abuse, Mother went to the police station and then took the child to the Mayerson Center. Mother would not have taken such actions but for the child's disclosure to her. Thus, the hearsay testimony was used to explain Mother's actions, not prove that Turner had in fact abused the child.

{¶34} Moreover, the trial court gave a limiting instruction that the statement could only be used to explain why Mother reacted the way she did, but not to prove the truth of the matter asserted that Turner abused the child. Thus, the evidence was properly admitted.

### B. 9-1-1 Call

{¶35} The trial court also admitted a recording of Mother's 9-1-1 call regarding the child's statement that Turner sexually abused her. Testimony offered to explain the investigative activities of witnesses, and not offered to prove the truth of the matters asserted, is admissible. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 98.

{¶36} The record indicates that Mother called 9-1-1 after speaking with the child and relayed to the dispatcher what the child told her. Mother was told an officer would respond to take her report, but none ever came. As a result, Mother called 9-1-1 again, about an hour later, and then went to make an in-person report after speaking with the dispatcher.

{¶37} The 9-1-1 call was used to show why Mother called twice and why she made an in-person report at the police station, as well as how the investigation began based on Mother's report. However, the call was not used to prove that Turner abused the child, and the trial court gave a limiting instruction indicating as much. Thus, the trial court did not abuse its discretion in permitting the evidence.

### C. Statements to Guidance Counselor

{¶38} The trial court allowed the child's school guidance counselor to testify to statements the child made about the abuse she incurred. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment are admissible as a hearsay exception. Evid.R. 803(4). Medical diagnosis includes mental health, not just physical symptoms, pain, or sensations so that statements made to mental health care providers can be included within the confines of Evid.R. 803(4). *In re S.A.*, 12th Dist. Butler Nos. CA2017-07-092 thru CA2017-07-098, 2017-Ohio-8792, ¶ 41.

{¶39} *In S.A.*, we considered whether statements made by an abused child to a therapist could be admissible pursuant to Evid.R. 803(4) and determined that the statements were admissible as an exception to the hearsay rule. Therein, the child discussed traumatic events with her therapist to develop skills to cope with the events and move forward. This court noted that the abuse suffered by the child was the type of traumatic event underlying the child's depressive symptoms which her therapist hoped to improve. As such, we determined that the child made the statements for the purpose of receiving treatment for her mental health. The same reasoning applies to the case sub judice wherein L.W. discussed her symptoms to seek treatment for her mental health issues.

{¶40} The child's school guidance counselor, who had a bachelor's degree in psychology and a master's degree in school counseling, testified that her role as a guidance counselor includes "psychological treatment" for students. The counselor also provided referrals to other outside sources for the purpose of medical treatment.

{¶41} The counselor testified that L.W. came to her with anxiety and panic attacks while at school. At first, the two discussed ways to cope with anxiety, such as breathing

exercises and meditation. The counselor charted L.W.'s "symptoms" over time and noted that the child was withdrawing more, was becoming more isolated, and had difficulty making eye contact. She also testified that when the child was ten years old, L.W. told her she thought she had started her period the night before because her vagina was bleeding.[1] Eventually, after meeting with the counselor over the course of two school years, L.W. told the counselor about the sexual abuse. The counselor testified that she immediately contacted children services, and that she told Mother to take the child to the Mayerson Center for medical and psychological attention.

{¶42} After the child's disclosure, the counselor continued to provide mental health support to the child, especially when the child suffered panic attacks at school. During these times, the child would cry and could not stand up, and would be taken to the counselor's office for help. For example, on one occasion, the child was brought to the counselor's office after she broke down in math class when the class was working on a problem that included the name "Jon." The counselor would then help the child work through her panic attack until she was well enough to return to class.

{¶43} Based on these circumstances, the trial court did not abuse its discretion in permitting the counselor's testimony about what the child told her as an exception to the hearsay rule. While not all guidance counselors provide medical or psychological support to their students, it is clear that L.W.'s guidance counselor was testifying specifically about statements the child made to her for purposes of treatment. The child described her symptoms and sensations, including mental and physical indications of her anxiety and panic, as well as their cause, so that the counselor could help the child or refer her and Mother to the proper treatments outside of school. Thus, according to Evid.R. 803(4), the

---

1. The child testified that she had not started to menstruate as she first believed, but had began bleeding after being vaginally raped by Turner the previous night.

child's statements regarding the abuse she incurred was admissible as an exception to the hearsay rule.

{¶44} However, and even if the testimony did not qualify as a statement for purposes of medical diagnosis, we would not find the admission of the testimony to be reversible error.[2] Instead, the testimony was cumulative to other testimony and evidence, including the child's own testimony of the abuse, which was subject to cross-examination. Also, there was overwhelming evidence of guilt, including DNA evidence demonstrating the sexual nature of Turner's abuse of the child.

D. Mother's Statements to L.W.'s Grandmother

{¶45} L.W.'s grandmother ("Grandmother") testified that Mother called her and told her that the child had disclosed Turner's abuse. A statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition is admissible as an excited utterance exception to the hearsay rule. Evid.R. 803(2). An out-of-court statement qualifies as an excited utterance if "(1) the statement was made in reaction to a startling event; (2) the statement was made under the stress of excitement caused by the event; and (3) the statement relates to the event. *State v. Cooperstein*, 12th Dist. Warren No. CA2018-09-117, 2019-Ohio-4724, ¶ 86.

{¶46} Mother called Grandmother and told her about Turner's abuse of the child. Grandmother testified that Mother was "hysterical," "crying," and "sobbing" during the phone call and that Mother could not be understood sometimes during the call. Thus, (1) Mother's phone call to Grandmother was made in reaction to the startling event of her daughter

---

2. Mental health diagnosis and treatment has not always been included when analyzing Evid.R. 803(4). *State v. Eastham*, 39 Ohio St.3d 307 (1988). In *Eastham*, Justice Brown determined in a concurring opinion that a guidance counselor was not included as a medical provider subject to Evid.R. 803(4) because the counselor did not provide treatment or diagnosis of a *physical* condition. In so deciding, Justice Brown relied on the theory that statements made for a "mental health condition * * * are not imbued with the same aura of reliability" as those regarding physical conditions. This theory has been expressly rejected since the time of Justice Brown's concurrence in *Eastham*. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267.

revealing sexual abuse, (2) Mother's statements were under the stress of learning of the abuse because she was hysterical and still very emotional at the time she was talking to Grandmother, and (3) the phone conversation related to L.W. disclosing the abuse. The record clearly establishes that Grandmother's testimony about Mother's statements was properly admitted as an excited utterance.

E. Mayerson Center Interview

{¶47} During trial, the state played the recording of the child's interview at the Mayerson Center over Turner's objection. Evid.R. 801(D)(1)(b) permits the admission of statements made by the declarant prior to trial that are consistent with his or her testimony. Evid. R. 801(D)(1)(b) permits the rehabilitation of a witness whose credibility has been attacked by means of a charge that she recently fabricated her story by admitting into evidence a consistent statement made by the witness prior to the time of the suggested invention or of the emergence of the motive to falsify, as tending to rebut the charge.

{¶48} In order for this exception to apply, the declarant must be subject to cross-examination and the statement must be offered to rebut an accusation that the declarant lied or was improperly influenced in her testimony. *State v. Glossip*, 12th Dist. Warren No. CA2006-04-040, 2007-Ohio-2066, ¶ 31. To be admissible, prior consistent statements must have been made before the existence of any motive or influence to falsify testimony. *Id.* at ¶ 32.

{¶49} After L.W. was cross-examined, the state presented the recording of L.W.'s forensic interview at the Mayerson Center. The trial court determined that the recording was admissible because cross-examination was an implied challenge of fabrication based on the questions asked by defense counsel.

{¶50} We find no abuse of discretion in the trial court's determination. By virtue of cross-examination and the questions posed to the child, defense counsel implied that the

child fabricated information or was improperly influenced in her testimony. For example, during cross-examination, defense counsel suggested through questions that L.W. had relayed information that she had actually overheard in "grownup conversations." Defense counsel also suggested that blood from L.W.'s vagina was actually from constipation, rather than from being vaginally raped. Counsel also asked whether L.W. was "a hundred percent accurate" in regard to her telling what the child called the "Something Very Bad Story." When the child answered that she had been accurate, counsel referenced "a lot of discrepancies * * *." Counsel also asked L.W. whether she realized how serious the situation was.

{¶51} When all of the cross-examination questions are considered in context, the record indicates that defense counsel's strategy was to suggest that the child's testimony had been influenced or that she was not relaying accurate and consistent information and therefore must not be telling the truth. Thus, the trial court did not abuse its discretion in determining the recording of L.W.'s interview was admissible as a hearsay exception.

F. Statements to the Mayerson Center Social Worker

{¶52} The state presented testimony from a social worker with the Mayerson Center who testified about statements the child made to her during a forensic interview. As noted above, statements made for the purpose of medical diagnosis are an exception to the hearsay rule. Specifically, statements made to a social worker for the purposes of medical diagnosis and treatment are an exception to the hearsay rule. *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742.

{¶53} In *Arnold*, the Ohio Supreme Court differentiated between statements made for medical diagnosis and those for investigatory purposes during a forensic interview at a treatment center. The court held that the child-victim's statements to the social worker were for the purpose of medical diagnosis when the child identified the perpetrator, discussed

the type of abuse alleged, gave a time frame of the alleged abuse, and identified the areas where the child had been touched.

{¶54} L.W. gave similar information to the Mayerson Center social worker, who testified that she shares information taken from the forensic interview with the medical staff at the Mayerson Center to determine what treatment the child needs. Specifically, the social worker testified that she consults with the nurses and physicians and receives medical recommendations based on what a child-victim tells her.

{¶55} Regarding L.W., the social worker testified that the child identified Turner as her abuser, described several different incidents of inappropriate sexual contact, and that the child identified the areas Turner touched her and forced her to touch him. L.W. told the social worker that Turner touched her vagina with his hands, put his penis inside her vagina and mouth on multiple occasions, and that Turner kissed her mouth and put his mouth on her chest. L.W. also referred to Turner's ejaculations as "his sweat" and told her that it was "wet, sticky, and gross." The social worker testified that as a result of the child's disclosures, the child had a full medical evaluation performed and was given treatment recommendations moving forward, including psychological referrals.

{¶56} The information given the social worker is the same as that discussed in *Arnold* and found admissible by the Ohio Supreme Court. We find the trial court did not abuse its discretion in permitting the statements as a hearsay exception for the purposes of medical diagnosis and treatment.

G. Statements Made to Psychotherapist

{¶57} The child's psychotherapist testified about the statements L.W. made to her about the abuse. These statements were made specifically for the purpose of medical diagnosis, as the psychotherapist used the statements to diagnose the child with post-

traumatic stress disorder and treat her accordingly. Thus, the trial court did not abuse its discretion in admitting the testimony.

### H. Cumulative Error

{¶58} Turner also argues that the cumulative effect of admitting the hearsay statements resulted in reversible error. According to the doctrine of cumulative error, a reviewing court "will reverse a conviction when the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 140. Harmless or nonprejudicial errors cannot become prejudicial by sheer number of alleged errors alone. *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 25.

{¶59} Despite Turner's multiple assertions that the trial court abused its discretion in permitting hearsay evidence, there is no danger of an unfair trial because each of the trial court's decisions were correct. As such, cumulative error does not apply, and Turner's final assignment of error is overruled.

{¶60} Judgement affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.