[Cite as *State v. Kolle*, 2022-Ohio-2459.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2021-10-024 |
| Appellee, | : | O P I N I O N<br>7/18/2022 |
| | : | |
| - vs - | : | |
| | : | |
| JOHN LAMAR KOLLE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI20190431


Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.


**M. POWELL, P.J.**

{¶ 1} Appellant, John Lamar Kolle, appeals his conviction in the Fayette County Court of Common Pleas for aggravated trafficking in drugs.

{¶ 2} On January 24, 2019, Fayette County Deputy Sheriff Charles Kyle was dispatched to an apartment complex in Washington Court House, Ohio regarding the report of a disturbance in apartment C. Upon arriving at the complex, Deputy Kyle observed

several individuals milling around in the parking lot. Upon questioning the individuals, the deputy learned that the disturbance had actually occurred in front of the apartment complex, that some of the people involved in the disturbance had left the area, and that several individuals involved in the disturbance had entered apartment B. Deputy Kyle went to apartment B and knocked on the door. Shawn Antis, a person known by the deputy to be an occupant of the apartment, opened the door. The deputy briefly spoke with Antis and advised him why he was there. Upon the deputy's request, Antis permitted him to enter the apartment. Once inside, Deputy Kyle observed six to eight individuals, asked the individuals about the disturbance, and conducted warrant checks on all the individuals, including appellant. Upon discovering there was an outstanding warrant for appellant, Deputy Kyle arrested him. While appellant was incarcerated in the jail, he made several telephone calls related to drug trafficking.

{¶ 3} Appellant was indicted on November 20, 2019, on three counts of aggravated trafficking in drugs. On November 26, 2019, appellant was served with the indictment and was arraigned. At the time, appellant was awaiting trial on unrelated charges in Franklin County. Appellant was incarcerated in the Franklin County jail on the Fayette County indictment and the Franklin County charges for the entire pendency of this case.

{¶ 4} The matter was originally scheduled for trial on February 4, 2020. However, there were several delays and continuances. On January 7, 2021, appellant moved to suppress all evidence against him, claiming that Deputy Kyle's January 24, 2019 entry into apartment B and warrant check on all individuals present in the apartment violated the Fourth Amendment protection against unreasonable searches and seizures. The trial court conducted a hearing on the motion on January 25, 2021, and continued the suppression hearing in progress to March 17, 2021.

{¶ 5} The case was eventually scheduled for trial on August 25, 2021. At an August

- 2 -

2, 2021 pretrial hearing, appellant's counsel moved to vacate the jury trial set for August 25, 2021, and requested a plea hearing. A plea hearing was held on August 30, 2021. Appellant orally moved to dismiss the charges for violation of his right to a speedy trial. The trial court denied the motion, the plea hearing proceeded, and appellant pled no contest to one count of aggravated trafficking in drugs (methamphetamine), a third-degree felony. On September 30, 2021, the trial court denied appellant's motion to suppress. The next day, the trial court sentenced appellant to an agreed 12-month prison term.

{¶ 6} Appellant now appeals his conviction, raising two assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO A STATUTORY AND CONSTITUTIONAL SPEEDY TRIAL UNDER [R.C.] 2945.71 AND ARTICLE I, SECTION 10, OHIO CONSTITUTION AND THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION.

{¶ 9} Appellant argues his statutory and constitutional speedy trial rights were violated by the state's delay in bringing him to trial because 649 days elapsed between the date he was indicted on November 20, 2019, and the date he pled no contest on August 30, 2021.

{¶ 10} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee the right to a speedy trial. The statutory speedy trial provisions set forth in R.C. 2945.71 through 2945.73 are coextensive with the constitutional speedy trial provisions. *State v. Turner*, 12th Dist. Brown No. CA2019-05-005, 2020-Ohio-1548, ¶ 21, citing *State v. King*, 70 Ohio St.3d 158, 1994-Ohio-412.

{¶ 11} Pursuant to R.C. 2945.71(C)(2), "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." Although appellant was incarcerated throughout the pendency of this case, he was

not held in jail *solely* on the pending Fayette County charges in lieu of bail but was held jointly on the Fayette County and Franklin County charges. Accordingly, the triple-count provision of R.C. 2945.71(E) is inapplicable. *State v. Messer*, 12th Dist. Clermont No. CA2006-10-084, 2007-Ohio-5899, ¶ 20; *State v. McDonald*, 48 Ohio St.3d 66 (1976), paragraph one of the syllabus. Therefore, the state was required to bring appellant to trial within 270 days from the date the aggravated drug trafficking indictment was filed; that is, the state was required to bring appellant to trial on or before August 16, 2021.

{¶ 12} When an appellant raises a violation of a speedy trial issue, an appellate court must compute a "try-by date." *Turner*, 2020-Ohio-1548 at ¶ 23. The court of appeals must count the days of delay chargeable to either side and determine whether the case was tried within the statutory time limits. *Id.* R.C. 2945.72 extends the time within which a defendant must be brought to trial for any period during which the defendant is unavailable for hearing or trial, by reason of other criminal proceedings against him, any period of delay necessitated by the defendant's motions, the period of any continuance granted on the defendant's own motion, and the period of any reasonable continuance granted other than upon the defendant's own motion. R.C. 2945.72(A), (E), and (H).

{¶ 13} Appellate review of speedy-trial issues involves a mixed question of law and fact. *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363, ¶ 15. An appellate court must defer to the trial court's findings of fact if they are supported by competent, credible evidence, but must independently review whether the trial court correctly applied the law to the facts of the case. *Id.*; *State v. Watkins*, 12th Dist. Preble No. CA2020-03-005, 2021-Ohio-163, ¶ 37.

{¶ 14} Appellant was indicted on November 20, 2019. He filed a discovery demand and request for a bill of particulars on December 10, 2019. The state responded to appellant's requests on December 11, 2019. The one day is chargeable to appellant. The

trial was originally scheduled for February 4, 2020. The record indicates that on January 13, 2020, appellant orally moved to continue the trial. On January 14, 2020, the trial court filed an entry granting appellant's January 13, 2020 oral motion for a continuance. The trial was continued to February 13, 2020. Under R.C. 2945.71(C), the 53-day delay between appellant's indictment and his first motion for a continuance ran against the state. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 39.

{¶ 15} At a pretrial hearing on February 12, 2020, appellant's counsel indicated she had not had sufficient time to prepare for trial. As stated above, appellant was incarcerated in Franklin County during the entire pendency of this case. A transcript of the hearing indicates that he had pending charges in Franklin and Pickaway Counties and that the parties were trying to find an acceptable trial date for appellant's aggravated drug trafficking charges given his multiple prosecutions. On February 13, 2020, the trial court filed an entry vacating the trial "for reasons set forth on the record." On March 10, 2020, the trial court continued the trial to June 10, 2020, "time tolled to the defendant." At this juncture, the number of days chargeable to the state remains at 53. R.C. 2945.72(H); *Myers* at ¶ 40.

{¶ 16} On June 1, 2020, appellant filed pro se a motion to be appointed new counsel. On June 2, 2020, the trial court sua sponte vacated the trial set for June 10, 2020, citing a "public health emergency good cause" due to COVID-19 and the Ohio governor's March 9, 2020 executive order, and continued the trial to August 27, 2020. The trial court found that the period of continuance was reasonable and necessary under R.C. 2945.72(H) and that the time was neither tolled to the state nor to appellant. A trial court's sua sponte continuance falls within continuances "granted other than on the accused's own motion" under R.C. 2945.72(H). The trial court's June 2, 2020 sua sponte continuance of the trial until August 27, 2020, because of the pandemic state of emergency was reasonable and is not chargeable to the state. *See State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-

Ohio-1693.

{¶ 17} On August 25, 2020, the trial court filed an entry granting appellant's August 24, 2020 oral motion for a continuance. The trial was continued to October 21, 2020. On October 19, 2020, appellant moved for a change of venue and to compel a hearing on his motion for a new counsel. On October 21, 2020, the trial court appointed John Cornely as new counsel and continued the trial to December 10, 2020; appellant's new counsel filed a discovery demand. The state responded to the discovery demand the next day. Ohio courts have found it is reasonable for a trial court to continue a case to give recently appointed defense counsel time to prepare for trial. *State v. Redelman*, 12th Dist. Clinton No. CA2012-04-010, 2013-Ohio-657, ¶ 24.

{¶ 18} On November 25, 2020, appellant moved to continue the trial on the grounds he needed additional time to investigate and the state failed to provide some discovery. The state provided additional discovery on December 4, 2020, and indicated it had no objection to a continuance. On December 8, 2020, the trial court continued the trial to January 28, 2021. On December 28, 2020, appellant moved for leave to file a motion to suppress which was granted by the trial court. Appellant filed his motion to suppress on January 7, 2021. A suppression hearing was held on January 25, 2021, and continued in progress to March 17, 2021. The trial was continued to March 18, 2021.

{¶ 19} On February 11, 2021, attorney William Mooney filed a notice of substitution of counsel, thereby replacing attorney Cornely as appellant's counsel. The record indicates that during a February 26, 2021 phone conference, appellant's counsel moved to continue the trial. On March 2, 2021, the trial court continued the trial to April 15, 2021.

{¶ 20} On March 17, 2021, May 10, 2021, and June 7, 2021, appellant moved to continue the trial; each time, the trial court granted appellant's motion. The trial was ultimately continued to August 25, 2021. On August 2, 2021, the trial court vacated the trial,

and a plea hearing was set for August 25, 2021, at the request of appellant's counsel. The plea hearing was ultimately held on August 30, 2021, because appellant was unavailable for transport due to a scheduled hearing in Franklin County. The total days chargeable to the state as of August 30, 2021, is still 53. R.C. 2945.72(A), (E), and (H).

{¶ 21} The plea hearing was held on August 30, 2021. As stated above, appellant orally moved to dismiss the aggravated drug trafficking charges for violation of his right to a speedy trial; the trial court dismissed the motion; the plea hearing proceeded; and appellant pled no contest to one count of aggravated trafficking in drugs.

{¶ 22} As the foregoing shows, there were several tolling events that occurred after appellant was indicted for aggravated trafficking in drugs that bring the total number of days chargeable to the state below the required 270-day time limit. These tolling events include appellant's numerous motions for a continuance, his changes of counsel, and his demand for discovery and request for a bill of particulars. R.C. 2945.72(E), (H). Appellant's statutory right to a speedy trial was not violated and the trial court did not err in denying his motion to dismiss on speedy trial grounds.

{¶ 23} Appellant further argues that the state violated his constitutional right to a speedy trial because the 649-day delay between his indictment and no contest plea was presumptively prejudicial.

{¶ 24} The United States Supreme Court set forth a balancing test that considers the following four factors in determining whether trial delays are reasonable under the Sixth and Fourteenth Amendments to the United States Constitution: (1) the length of the delay, (2) the reason the government assigns to justify the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-532, 92 S.Ct. 2182 (1972); *State v. Triplett*, 78 Ohio St.3d 566, 568, 1997-Ohio-182.

**{¶ 25}** "The first factor, the length of the delay, is a 'triggering mechanism,' determining the necessity of inquiry into the other factors." *Triplett* at 569. Unless there is some delay which is "presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker* at 530. Post-accusation delay approaching one year is generally found to be presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652, fn. 1, 112 S.Ct. 2686 (1992); *Triplett* at 569. Because the time lapse between appellant's November 20, 2019 indictment and his no contest plea on August 30, 2021, the same day as the trial court decision denying appellant's motion to dismiss, was 649 days and thus exceeds one year, the delay was presumptively prejudicial and the remaining *Baker* factors must be addressed. *Messer*, 2007-Ohio-5899 at ¶ 10.

**{¶ 26}** Upon reviewing the remaining *Baker* factors, we find that appellant was not denied his constitutional right to a speedy trial. As discussed above, the reasons for the delay were largely attributable to appellant's numerous requests for continuance, changes in counsel, and other motions. Nothing in the record suggests that the state intentionally or with bad faith delayed prosecution of the case. Although appellant knew of his indictment, he did not timely invoke his speedy trial right, instead *orally* moving to dismiss the indictment on the day of the plea hearing, 649 days after he was charged with aggravated drug trafficking. In support of his speedy trial claim, appellant listed numerous instances where the time should not be chargeable to him. Although the state was given the opportunity to state on the record why the motion to dismiss should be overruled, such was not a hearing on appellant's speedy trial claim. As the state told the trial court, appellant's failure to file a written motion deprived the state of an ample opportunity to respond. Finally, the record does not support a finding appellant suffered any actual prejudice.

**{¶ 27}** In light of the foregoing, we find that neither appellant's statutory right to a speedy trial nor his constitutional right to a speedy trial was violated in this case. Appellant's

first assignment of error is overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 30} Appellant argues the trial court erred in denying his motion to suppress. Appellant asserts that his Fourth Amendment rights were violated because Deputy Kyle did not have a reasonable articulable suspicion to enter apartment B in the first instance and conduct a warrant check on all of those present.

{¶ 31} Appellate review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Fletcher*, 12th Dist. Brown No. CA2016-08-016, 2017-Ohio-1006, ¶ 30. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *Id.*

{¶ 32} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." A presumption of unreasonableness attaches to all warrantless home entries. *Fletcher* at ¶ 31. However, "[w]hen law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469, 131 S.Ct. 1849 (2011). A "knock and talk"

- 9 -

by law enforcement is a "permissible warrantless intrusion" that does not require "any objective level of suspicion." *Fletcher* at ¶ 31.

**{¶ 33}** We find that Deputy Kyle's actions in entering apartment B and conducting a warrant check did not violate appellant's Fourth Amendment rights. While investigating a disturbance complaint at the apartment complex, Deputy Kyle went to apartment B, knocked on the door, and talked to Shawn Antis. As stated above, a law enforcement officer's "knock and talk" is a "permissible warrantless intrusion" that does not require "any objective level of suspicion." *Id.* Antis was a person known by the deputy to be an occupant of the apartment. At the suppression hearing, appellant testified that Antis was temporarily residing in the apartment. Upon the deputy's request, Antis permitted him to enter the apartment. Once inside, the deputy conducted a warrant check on the individuals in the apartment, including appellant. Deputy Kyle testified that he routinely conducts a warrant check when coming in contact with people while investigating a complaint. Moreover, the deputy's decision to conduct the warrant check was a "negligibly burdensome precaution" for officer's safety. *See Rodriguez v. United States*, 575 U.S. 348, 135 S.Ct. 1609 (2015). Once Deputy Kyle discovered the warrant, he had the obligation to arrest appellant as a "warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." *United States v. Leon*, 468 U.S. 897, 920, fn. 21, 104 S.Ct. 3405 (1984).

**{¶ 34}** Furthermore, the indictment charging appellant with drug trafficking offenses did not arise from Deputy Kyle's January 24, 2019 entry into apartment B but from appellant's own conduct in voluntarily placing telephone calls from the jail relating to drug trafficking. Appellant's arrest on January 24, 2019, was solely due to an unrelated outstanding arrest warrant. No evidence supporting the drug trafficking indictment was obtained as a result of Deputy Kyle's encounter with appellant on January 24.

{¶ 35} However, even assuming that Deputy Kyle's entry into apartment B and his conducting a warrant check violated appellant's Fourth Amendment rights, exclusion of the drug trafficking evidence against appellant would be inappropriate under the attenuation doctrine. The doctrine is an exception to the exclusionary rule and provides that evidence discovered as a result of unconstitutional police conduct is admissible "when the connection between the unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Utah v. Strieff*, 579 U.S. 232, 237-238, 136 S.Ct. 2056 (2016), quoting *Hudson v. Michigan*, 547 U.S. 586, 593, 126 S.Ct. 2159 (2006).

{¶ 36} In *Strieff*, an officer conducting surveillance of a suspected drug residence stopped the defendant after observing him leave the residence. *Strieff* at 235. The officer detained the defendant in a nearby parking lot and asked for his identification, which the defendant provided. *Id.* The officer was notified by dispatch that the defendant had an outstanding arrest warrant for a traffic violation. *Id.* The officer arrested the defendant, searched him, and found methamphetamine and drug paraphernalia. *Id.* at 236. The defendant moved to suppress the evidence arguing it was derived from an unlawful investigatory stop. *Id.* The Utah Supreme Court ultimately ordered the evidence suppressed. *Id.*

{¶ 37} On appeal, the United States Supreme Court examined whether the discovery of a valid arrest warrant was a sufficient intervening event to break the causal chain between the unlawful stop and the discovery of drug-related evidence on the defendant's person. *Strieff*, 579 U.S. at 238. The Supreme Court identified three factors to be considered when applying the attenuation doctrine: (1) the "temporal proximity" between the unconstitutional conduct and the discovery of the evidence to determine how closely the discovery of

evidence followed the unconstitutional search, (2) the "presence of intervening circumstances," and (3) the "purpose and flagrancy of the official misconduct." *Id.* at 239.

**{¶ 38}** Applying these factors, the Supreme Court held that "the evidence discovered on Strieff's person was admissible because the unlawful stop was sufficiently attenuated by the pre-existing arrest warrant." *Id.* at 242. The Court noted that while the first factor favored suppressing the evidence because the officer discovered drug contraband on the defendant's person only minutes after the illegal stop, the second and third factors strongly favored the state. Specifically, the Supreme Court found that the outstanding warrant for the defendant's arrest predated the officer's investigation and was "a critical intervening circumstance that is wholly independent of the illegal stop. The discovery of that warrant broke the causal chain between the unconstitutional stop and the discovery of evidence by compelling [the officer] to arrest Strieff." *Id.* at 240, 242. The Court further found that the officer's "errors in judgment hardly [rose] to a purposeful or flagrant violation of Strieff's Fourth Amendment rights." *Id.* at 241. The Court noted "there [was] no indication that this unlawful stop was part of any systemic or recurrent police misconduct. To the contrary, * * * the stop was an isolated instance of negligence that occurred in connection with a bona fide investigation of a suspected drug house." *Id.* at 242.

**{¶ 39}** Applying the *Strieff* factors in the case at bar, we find that the drug trafficking evidence against appellant is admissible under the attenuation doctrine. All three factors strongly favor the state. First, the evidence was discovered months after appellant's January 24, 2019 arrest in apartment B. Second, the discovery of a preexisting warrant for appellant's arrest was a critical intervening circumstance wholly independent from the deputy's entry into the apartment and warrant check that broke any causal chain between any Fourth Amendment violation and the discovery of the drug trafficking evidence against appellant. Finally, there is no evidence that Deputy Kyle's entry into apartment B and

subsequent warrant check reflected flagrantly unlawful police misconduct. *Strieff*, 579 U.S. at 242; *State v. Stout*, 12th Dist. Butler No. CA2020-08-085, 2021-Ohio-1125.

{¶ 40} In light of the foregoing, the trial court did not err in denying appellant's motion to suppress. Appellant's second assignment of error is overruled.

{¶ 41} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.