[Cite as *State v. Jennings*, 2024-Ohio-383.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-03-003 |
| | : | O P I N I O N |
| - vs - | | 2/5/2024 |
| | : | |
| DAVID L. JENNINGS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 22 CR 013860

Martin P. Votel, Preble County Prosecuting Attorney, and Sean Brinkman, Assistant Prosecuting Attorney, for appellee.

Hubler and Woolum Law Co. LPA, and Bridget N. Woolum, for appellant.

**M. POWELL, J.**

{¶ 1} Appellant, David Jennings, appeals his conviction and sentence in the Preble County Court of Common Pleas for gross sexual imposition.

{¶ 2} In 2021, appellant was a neighbor of H.T. and her parents (individually referred to as "Mother" and "Father"). H.T. was born in February 2009 and has a cognitive

disability and an auditory processing disorder. H.T. has known appellant since she was a baby; she had a close bond with him, saw him as a protector, and trusted him implicitly. Appellant regularly took H.T. to Dairy Queen for ice cream.

{¶ 3} On Friday, November 12, 2021, appellant took H.T., then 12 years old, to Dairy Queen for a Blizzard; H.T. was in the front passenger seat. During the drive to Dairy Queen, appellant touched H.T.'s vaginal area over her underwear using a finger on his right hand. He also touched the tip of her chest under her bra with his right hand. Appellant asked H.T. if the touching felt good and whether she had started her period. On the ride home, appellant once again touched H.T.'s vaginal area over her underwear using a finger on his right hand. Both times, H.T. stared out the window, feeling nervous, confused, and scared.

{¶ 4} Upon returning home from Dairy Queen, H.T. immediately went to Mother's bedroom. H.T. was pacing back and forth and was emotional and frantic but eventually told Mother that appellant had touched her chest and vaginal area. Mother told Father. The family reported the incident to children's services on Sunday, November 14, 2021, and to law enforcement the following day.

{¶ 5} On November 18, 2021, H.T. described the incident during a forensic interview conducted at JACY House, a child advocacy center in Richmond, Indiana. The interview was video-recorded and was observed live by Detective Paul Plaugher in a different room. During a subsequent police interview, appellant admitted taking H.T. to Dairy Queen but denied touching her. In March 2022, another child reported that appellant, the child's step-grandfather, had sexually touched her once while he was taking her to Taco Bell and another time in his living room.

{¶ 6} Appellant was indicted in May 2022 on three counts of gross sexual imposition. Count 1 related to H.T.; Counts 2 and 3 related to the other child. All three

counts were accompanied by a sexually violent predator specification. Appellant filed a motion in limine seeking to prohibit the state from presenting the forensic interviews of H.T. and the other child at trial. The gross sexual imposition charges were tried to a jury; the specifications were tried to the bench. At the jury trial, H.T., Mother, Father, Detective Plaugher, and the JACY House's executive director testified on behalf of the state; appellant testified on his own behalf. Following H.T.'s testimony and a brief hearing on appellant's motion in limine during which the state argued that H.T.'s forensic interview was admissible under Evid.R. 801(D)(1)(b) and 803(4), the trial court admitted the videotape of H.T.'s forensic interview under Evid.R. 801(D)(1)(b). The videotape was then played to the jury.

{¶ 7} On February 28, 2023, the jury found appellant guilty of gross sexual imposition regarding H.T. and acquitted him of the gross sexual imposition counts related to the other child. The trial court subsequently acquitted appellant of the sexually violent predator specification accompanying Count 1. The court sentenced appellant to a maximum five-year prison term.

{¶ 8} Appellant now appeals, raising three assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED WHEN IT ALLOWED THE ADMISSION OF HEARSAY EVIDENCE.

{¶ 11} Appellant argues that the trial court erred in admitting H.T.'s forensic interview. Appellant asserts that the forensic interview was not conducted for the purpose of medical diagnosis or treatment but to collect evidence of a crime against him, and therefore, H.T.'s statements during the interview do not fall under the "medical treatment" exception to the hearsay rule under Evid.R. 803(4).

{¶ 12} The admission or exclusion of evidence rests within the trial court's discretion and such decisions will not be reversed absent an abuse of discretion. *State v. Turner*,

12th Dist. Brown No. CA2019-05-005, 2020-Ohio-1548, ¶ 31. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is inadmissible unless it falls within one of the enumerated exceptions in the rules or is otherwise excepted. *Turner* at *id.*

{¶ 13} The trial court admitted H.T.'s forensic interview under Evid.R. 801(D)(1)(b), and not Evid.R. 803(4). Evid.R. 801(D)(1)(b) permits the admission of statements made by the declarant prior to trial that are consistent with his or her testimony. Pursuant to Evid.R. 801(D)(1)(b), an out-of-court statement is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *State v. Brown*, 12th Dist. Butler No. CA2011-11-207, 2013-Ohio-1610, ¶ 16. Hence, Evid. R. 801(D)(1)(b) "permits the rehabilitation of a witness whose credibility has been attacked by an express or implied charge that he recently fabricated his story or falsified his testimony in response to improper motivation or undue influence." *Id.*

{¶ 14} In order for the rule to apply, the declarant must be subject to cross-examination and the statement must be offered to rebut an accusation that the declarant lied or was improperly influenced in her testimony. *Turner*, 2020-Ohio-1548 at ¶ 48. To be admissible, prior consistent statements must have been made before the alleged influence or motive to fabricate arose. *Id.*; *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 107.

{¶ 15} We find that the trial court did not abuse its discretion in admitting H.T.'s forensic interview under Evid.R. 801(D)(1)(b). By virtue of cross-examination and the questions posed to H.T., defense counsel implied that H.T. fabricated information or was

improperly influenced. Defense counsel asked H.T. how many people she told her story, how many times she told her story, and whether anyone influenced her story. In particular, defense counsel's last question to H.T. was, "Is there anything else your mom wants us to know?" When all of the cross-examination questions are considered in context, the record indicates that defense counsel's strategy was to suggest that H.T.'s testimony had been influenced and therefore must not be telling the truth. *Turner*, 2020-Ohio-1548 at ¶ 51. Accordingly, H.T.'s statements during the forensic interview were not hearsay and the interview was properly admitted under Evid.R. 801(D)(1)(b) and we need not address whether the interview was admissible under Evid.R. 803(4).

{¶ 16} Appellant's first assignment of error is overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED IN ENTERING A VERDICT OF GUILTY BECAUSE SUCH VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 19} Appellant argues that his conviction for gross sexual imposition is against the manifest weight of the evidence because (1) in one aspect, H.T.'s testimony during the jury trial was inconsistent with her testimony during the sexually violent predator specification bench trial, and was influenced by listening to her parents repeat her allegations to law enforcement, (2) H.T.'s testimony that appellant tried to unhook her bra while driving to Dairy Queen was not plausible, and (3) given H.T.'s cognitive disability and auditory processing disorder, the trial court erred by failing to determine whether H.T. was competent to testify.[1]

---

1. We note with disapproval appellant's approach of raising issues that require different legal analyses under his second assignment of error, instead of properly raising each specific issue in separate assignments of error. *See* Loc.R. 11(B)(3); *State v. Harner*, 12th Dist. Brown No. CA2019-10-012, 2020-Ohio-3071, ¶ 6, fn. 2.

**{¶ 20}** At the outset, we briefly address appellant's competency argument. H.T. was 14 years at the time of trial and was therefore presumed competent to testify. *See* R.C. 2317.01; *State v. Clark*, 71 Ohio St.3d 466, 469-471, 1994-Ohio-43. This court has previously determined that an appellate court need not address the issue of competency if it was not presented to or decided by the lower court. *State v. Smallwood*, 12th Dist. Butler No. CA95-12-209, 1996 Ohio App. LEXIS 4536, *3 (Oct. 14, 1996); *State v. McCoy*, 12th Dist. Butler No. CA87-02-87, 1987 Ohio App. LEXIS 9133 (Oct. 12, 1987). In this case, appellant did not raise H.T.'s competency before the trial court, and the trial court did not initiate a voir dire examination of H.T. to determine whether she was competent to testify. Therefore, we need not address this issue on appeal. *Id.* Even if we were, a thorough review of her testimony indicates that H.T. did not testify in such a way as to undermine her ability to accurately relay facts and gave the trial court no reason to question the soundness of her mind.

**{¶ 21}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Warman*, 12th Dist. Butler No. CA2016-02-029, 2017-Ohio-244, ¶ 56.[2] This

---

2. Appellant concludes his second assignment of error by asserting that "there is insufficient evidence to support [his] conviction." However, the concepts of sufficiency of the evidence and weight of the evidence are legally distinct. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 41. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although the concepts of sufficiency of the evidence and weight of the evidence are legally distinct, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Workman*, 12th Dist. Clermont Nos. CA2016-12-082 and CA2016-12-083, 2017-Ohio-8638, ¶ 22. Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. *Id.*

discretionary power should be exercised only in extraordinary circumstances when the evidence presented weighs heavily against the conviction. *Id.*

{¶ 22} Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4), which prohibits an individual from having sexual contact with another, not the spouse of the offender, when the other person is less than 13 years of age, whether or not the offender knows the age of that person. Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶ 23} After a thorough review of the record, we find that appellant's conviction for gross sexual imposition is not against the manifest weight of the evidence. During the jury trial, H.T. described how appellant touched her vaginal area and chest while in appellant's car. H.T. testified that appellant touched her vaginal area with a finger on his right hand and "wiggled the spot where [she] pee[s]," that he could not put his whole hand inside her sweatpants because they were tightly tied, that he touched the tip of her chest under her bra with his right hand, and that he unsuccessfully tried to unhook her bra. H.T. further testified that appellant asked her whether the touching felt good and whether she had started her period. H.T. testified that upon returning from Dairy Queen, she immediately told Mother about the incident. Mother then told Father. H.T.'s trial testimony was consistent with her statements during the forensic interview. On redirect examination, H.T. testified that she talked about what she remembered during the forensic interview, that Mother did not tell her what to say during the interview, and that no one told her what to say at trial.

{¶ 24} Mother and Father both testified that appellant came over on the day of the incident and offered to take H.T. to Dairy Queen. The parents' testimony indicates that

upon returning home, H.T. first told Mother about the incident and later told Father as well. Both parents described H.T.'s demeanor as she separately recounted the incident to them. Mother testified that H.T. was pacing back and forth and was emotional and frantic; Father testified that H.T. was jittery, anxious, and pacing back and forth. Mother testified that no one went over the incident with H.T. during the weekend before the parents reported it to law enforcement. Moreover, she simply told H.T. to tell everything she remembered during the forensic interview.

{¶ 25} Appellant testified he took H.T. to Dairy Queen on November 12, 2021, because she wanted to go there. Appellant denied inappropriately touching H.T. during the drive to and from Dairy Queen. Appellant testified that he spent less time with H.T. in 2019 after H.T. alleged the other child had inappropriately touched her. Appellant explained that this allegation made him nervous and he was "afraid it coulda been me." Nevertheless, appellant continued to take H.T. to Dairy Queen alone with him in his car. Appellant testified that doing so was a huge mistake.

{¶ 26} Although appellant believes H.T.'s testimony lacked credibility and was at times implausible, it is well established that it is the province of the jury to make determinations of credibility and the weight to be given the evidence. *State v. Martino*, 12th Dist. Butler No. CA2017-09-139, 2018-Ohio-2882, ¶ 13. The jury found H.T.'s testimony believable and that of appellant not believable. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact or because the trier of fact believed the testimony of the state's witnesses. *State v. Blaylock*, 12th Dist. Preble No. CA2002-03-005, 2002-Ohio-6005, ¶ 11; *Martino* at *id*. Because the jury was in the best position to determine the facts of the case based upon seeing and hearing the witnesses testify, we will not disturb the jury's determination regarding which version of events was credible, and which was not. *See Warman*, 2017-Ohio-244 at ¶ 59.

{¶ 27} In light of the foregoing, we find that the jury did not lose its way and did not create such a manifest miscarriage of justice that appellant's gross sexual imposition conviction must be reversed. Appellant's second assignment of error is overruled.

{¶ 28} Assignment of Error No. 3:

{¶ 29} THE TRIAL COURT ERRED WHEN IT IMPOSED THE MAXIMUM SENTENCE.

{¶ 30} Appellant argues that the "trial court's sentence does not comply with the principles and purposes of sentencing under R.C. 2929.11 and is not consistent with the seriousness and recidivism factors of R.C. 2929.12."[3] Appellant further asserts that the trial court failed to make findings under R.C. 2929.13(D).

{¶ 31} R.C. 2953.08(G) defines the standard of review for felony sentencing appeals. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 21. R.C. 2953.08(G)(2) states that an appellate court may vacate or modify a felony sentence only if it "determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. The relevant statutes are R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), and 2929.20(I). "A felony sentence is not clearly and convincingly contrary to law if the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible sentencing range." *State v. Clinger*, 12th Dist. Preble No. CA2021-11-014, 2022-Ohio-3691, ¶ 39. "Although a court imposing a felony sentence must consider the purposes of felony sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12, 'neither R.C. 2929.11 nor 2929.12 requires [the] court to make any specific factual findings

---

3. We note that appellant's brief inadvertently omitted pages nine and ten under his third assignment of error making it difficult to understand and address his arguments.

on the record.'" *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, ¶ 20, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 20.

**{¶ 32}** A conviction for third-degree felony gross sexual imposition under R.C. 2907.05(A)(4) subjects the offender to a maximum term of up to 60 months in prison. R.C. 2929.14(A)(3); *State v. Bevly*, 142 Ohio St.3d 41, 2015-Ohio-475, ¶ 25. A violation of R.C. 2907.05(A)(4) carries a presumption that a prison term shall be imposed for the offense— R.C. 2907.05(C)—and is "necessary in order to comply with the purposes and principles of sentencing under [R.C.] 2929.11." R.C. 2929.13(D)(1); *State v. Tillett*, 12th Dist. Butler No. CA2019-11-192, 2020-Ohio-3836, ¶ 11.

**{¶ 33}** R.C. 2929.13(D)(2) requires a trial court to make specific findings that the presumption of incarceration has been overcome before imposing a term of community control sanctions. "However, R.C. 2929.13(D)(2), by its own language, only applies to sentences imposed for felonies of the first or second degree and certain felony drug offenses. Additionally, R.C. 2929.13(D)(2) requires that the specific findings be made only in situations where the trial court does *not* impose a prison term." (Emphasis sic.) *State v. Jones*, 2d Dist. Montgomery No. 29362, 2022-Ohio-3349, ¶ 8. Furthermore, "R.C. 2929.13(D)(1) explicitly states that '[d]ivision (D)(2) of this section *does not apply* to a presumption established under this division' to a conviction for [gross sexual imposition] pursuant to R.C. 2907.05(A)(4)," the offense of which appellant was convicted. (Emphasis sic.) *Id.* The trial court, therefore, did not need to make any findings under R.C. 2929.13.

**{¶ 34}** Before imposing sentence, the trial court stated it had reviewed the presentence investigative report and the sentencing memoranda submitted by appellant and the state. The record shows that the court considered the two felony-sentencing statutes, R.C. 2929.11 and 2929.12. A prison term of 60 months is within the statutory range. *See* R.C. 2929.14(A)(3). "Nothing in R.C. 2953.08(G)(2) permits an appellate court

to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. In particular, R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry[.]" *Jones*, 2020-Ohio-6729 at ¶ 42. Our review need go no further. There are no unsupported statutory findings, and the sentence is not contrary to law. *Clinger*, 2022-Ohio-3691 at ¶ 38-41.

**{¶ 35}** Appellant's third assignment of error is overruled.

**{¶ 36}** Judgment affirmed.

HENDRICKSON, P.J., and BYRNE, J., concur.