[Cite as *State v. Clinger*, 2022-Ohio-3691.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-11-014 |
| - vs - | : | O P I N I O N<br>10/17/2022 |
| | : | |
| CALE CLINGER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 20 CR 13498

Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Ryan Agee, Attorney at Law LLC, and Ryan Agee, for appellant.

**HENDRICKSON, J.**

{¶1} Appellant, Cale Clinger, appeals his conviction in the Preble County Court of Common Pleas for domestic violence. For the reasons stated below, we affirm his conviction.

**I. Facts and Procedural History**

{¶2} Around 6 p.m., on November 11, 2020, Deputy Dane Boyd of the Preble

County Sheriff's Office was dispatched to Deer Run campground, where Clinger lived in a trailer with his mother, Mona, and his aunt, Marie. Someone had called 911 because a woman outside the trailer was screaming for help. When he arrived, Deputy Boyd spoke with Mona and Marie and recorded an interview with them. Marie told the deputy that she had been inside the trailer and could hear Mona and Clinger arguing. Marie said that she was afraid of Clinger and that she knew he had harmed Mona in the past, so she went outside to stop the argument. Clinger ran into the trailer, and Marie followed. She was worried because a similar incident had occurred recently, and he had ended up destroying some of her possessions. Clinger had locked the trailer's front door, so Marie went to the back door and up the step to go inside. When she tried to enter the trailer, Clinger blocked the doorway. Marie told Deputy Boyd that Clinger then shoved her out of the camper and that she had stumbled on the step, scraping her knee, before landing on the ground. Deputy Boyd arrested Clinger for domestic violence and took him to jail.

{¶3} A week later, Clinger called Mona from jail. For much of the 15-minute recorded conversation, Clinger tried to persuade Mona to get Marie not to press charges. He pleaded with his mother to get her to drop the charge, "Cause I ain't a violent dude, you know what I mean?" Mona responded, "Oh, I know you're not violent but you have been." Clinger agreed, saying, "I know, mother * * *." Mona repeated several times that Marie did not want him to go to prison and wanted only that he get help. Clinger promised that he would. Near the end of the phone call, he told Mona that Marie needed to recant her accusation that he had shoved her. Clinger said that Marie should say that she had not realized that there was a rug on the ground and that she had tripped on it. She should say, instructed Clinger, that she may have said some things that she did not mean to say. Mona added, "we could also say that you know with her cancer, she wasn't * * * she wasn't thinking right. Didn't think about it till her and I got to talking later on." Clinger told Mona that Marie

needed to recant her accusation the next day, when the preliminary hearing was scheduled.

{¶4} Marie sent a letter to the court recanting her accusation that Clinger had shoved her. She wrote:

> I, Marie Hyde, am revolking [sic] my statement pertaining to Cale Clinger's arrest on November 11, 2020 on my own free will. I have chemo brain, it messes with my short term memory, and I forgot or can't remember things that happen. It takes me a while to remember. Cale did not push me. I tripped over the rug outside my door. I didn't realize what really happened until Mona and I started talking about that night. I'm sorry to have wasted the on-duty deputies [sic] time on filing charges from my statement that night.

{¶5} The letter failed to have any effect on the prosecution. Clinger was indicted on one count of domestic violence in violation of R.C. 2919.25(A). The violation was charged as a fourth-degree felony, under R.C. 2919.25(D)(3), because Clinger had a previous conviction for domestic violence.

{¶6} In September 2021, the case was tried to a jury. Deputy Boyd and Marie testified for the state. The deputy testified that when he arrived Marie was quite distraught, crying and very upset. During Boyd's testimony, the prosecutor played a stipulated recording of his interview with Marie and Mona. Deputy Boyd also testified that Clinger's criminal history report showed a prior conviction for domestic violence, and the prosecutor submitted a stipulated journal entry of the conviction. In her testimony, Marie stuck to what she had written in the letter. She testified that she had recanted her original allegation against Clinger after sitting on her porch trying to remember what had happened and talking with Mona, because she just could not remember all of it. Marie said that she felt her memory was better a day or two after the incident than it had been on the evening that the incident occurred.

{¶7} Mona testified for the defense. During cross-examination, the prosecutor asked Mona whether she and Clinger had discussed trying to get Marie to change her story:

> A. I don't think we was tryin' to get her to change her story as much as for her to think about really what happened cause Cale didn't push her down, she had fallen down.
>
> Q. Well, how do you know that? You didn't see it?
>
> A. Cause I know Cale, he wouldn't, he just wouldn't do that.
>
> Q. He wouldn't do what?
>
> A. He would never put his- he push his sis- his aunt down. He wouldn't push me down. He's not natured like that. We might argue and butt heads, but he- he's not physical like that. He's just not that way.

The prosecutor asked for a sidebar and argued to the trial court that, by testifying that Clinger is not violent, Mona had opened the door to his prior domestic-violence conviction as well as his criminal history generally. Defense counsel responded, "I mean I object to it, but I also- I also see your side of it, I mean, so... ." The trial court agreed with the prosecutor.

{¶8} Continuing cross-examination, the prosecutor asked Mona if she was familiar with Clinger's prior domestic violence conviction—in which she was the victim—and asked if this changed her mind about whether he would have shoved Marie. Mona said no. The prosecutor asked if her opinion would change knowing Clinger's criminal history. She again answered no. The prosecutor then went through several of Clinger's past convictions—leaving the scene of an accident, robbery, tampering with evidence, sale of counterfeit controlled substances, forgery, aggravated possession of drugs, possession of heroin, and trespass in a habitation. Mona said that none of these changed her mind because the offenses were not physical and not against her or Marie.

{¶9} Against the advice of counsel, Clinger took the stand to testify in his own defense. He said that he did not push Marie. Clinger also talked about the details of his prior domestic violence conviction and admitted that he had pleaded guilty to the charge.

{¶10} The jury found Clinger guilty. The trial court sentenced him to 18 months in

prison, the maximum term for a fourth-degree felony.

## II. Analysis

{¶11} On appeal, Clinger assigns three errors to the trial court, which will be addressed out of order.[1] In the second assignment of error, he argues that the prosecutor should not have been permitted to ask about his prior convictions during Mona's cross-examination. Clinger argues in the first assignment of error that the evidence supporting his conviction is insufficient and that the manifest weight of the evidence is against conviction. Lastly, in the third assignment of error, Clinger argues that the trial court failed to make certain findings and should not have imposed the maximum sentence. We begin with the second assignment of error.

### A. Evidence of prior convictions

{¶12} Assignment of Error No. 2:

{¶13} THE TRIAL COURT ERRED BY ADMITTING OTHER BAD ACTS EVIDENCE AND IMPROPERLY INSTRUCTING JURY ABOUT SAID ACTS.

{¶14} In his second assignment of error, Clinger argues that the prosecutor should not have been permitted to mention his prior crimes during Mona's cross-examination. He contends that this evidence was inadmissible under Evid.R 404(B) and was unfairly prejudicial.

{¶15} Evid.R. 404(A) "is a general prohibition on using evidence of a person's character to prove that he acted 'in conformity therewith on a particular occasion.'" *State v. Tench,* 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 139. Evid.R. 404(B) explicitly extends the

---

1. Clinger's appellate brief includes more than three assignments of error. Those listed in the table of contents include that the trial court erred by denying his motion for acquittal (but do not include the assignment of error challenging his sentence). In addition, in the introductory paragraph to his argument, Clinger sets forth two assignments of error that do not really make sense procedurally or factually in this case: that the trial court erred by not accepting his guilty plea at the arraignment and that Clinger was not sufficiently informed of his rights before pleading guilty. We do not address any of these other assignments of error, as none is argued. We assume that their inclusion was inadvertent.

general rule to prior conduct: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes * * *."[2]

**{¶16}** The general rule is subject to several exceptions. *See* Evid.R. 404(A)(1)-(3). The exception relevant in this case is the one concerning the character of the accused: "Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *." Evid.R. 404(A)(1). This makes it clear that only the accused can make his or her character a relevant issue, by offering evidence of a particular character trait. By doing so, though, the accused "opens the door" for the prosecution to offer rebuttal evidence on that trait.

**{¶17}** Here, on cross-examination, Mona testified that Clinger did not push Marie. The prosecutor asked her how she knew that, since she did not see the altercation. Mona replied that " he wouldn't do that." "He wouldn't do what?" asked the prosecutor. "He would never put his- he push his sis- his aunt down. He wouldn't push me down. He's not natured like that. * * * [H]e's not physical like that. He's just not that way." At a sidebar, the prosecutor argued: "I think her response is opening the door to a prior domestic that they've been involved in (unintelligible) and his criminal history at large. The fact that he would never do this, that he's not violent." Defense counsel did object, though only half-heartedly, and made no argument against the prosecutor's contention. Nor did counsel ever ask for a limiting instruction. The trial court agreed with the prosecutor and ruled that Mona had opened the door to Clinger's prior convictions.

**{¶18}** Resuming cross-examination, the prosecutor asked Mona about Clinger's

---

2. This is the version of Evid.R. 404(B) in effect at the time of the trial. Mostly non-substantive changes to division (B) went into effect on July 1, 2022. The quoted provision is now split between Evid.R. 404(B)(1) and (2).

prior domestic-violence conviction. Mona admitted that she was the victim in that case. The prosecutor then asked her whether that conviction "change[d] [her] opinion at all that this Defendant would never do such a thing * * * when he's done it before?" Mona responded that "no, it doesn't change my opinion at all cause * * * [h]e's never put his hands on me, ever." The prosecutor asked her if she was familiar with Clinger's criminal history. Mona said that she was. The prosecutor then went through several of Clinger's prior felony convictions—leaving the scene of an accident, robbery, tampering with evidence, sale of counterfeit controlled substances, theft, forgery, aggravated possession of drugs, possession of heroin, and trespass in a habitation—and after each one asked Mona if the conviction changed her mind as to whether Clinger would push Marie. Finally, the prosecutor asked, "[w]ith that criminal history, * * * none of that changes your mind * * * that this Defendant would never put his hands on his aunt?" Mona was adamant: "No, Sir. It does not change my mind at all. Cale would never put his hands on myself or his aunt. Ever."

{¶19} "Under Evid.R. 405(A), 'inquiry is allowable into relevant specific instances of conduct,' on cross-examination, to challenge the opinion of a character witness." *State v. Jackson*, 57 Ohio St.3d 29, 39 (1991) (holding that because defendant's girlfriend testified about defendant's character, the prosecutor could cross-examine her about specific instances of conduct). Here, Mona's characterization of Clinger as not physical and nonviolent opened the door for cross-examination about specific instances of conduct that conflicted with her opinion testimony. It is true, like Clinger asserts, that the prosecution may not offer evidence of a negative trait of character of the accused to suggest that the accused acted in conformity with that character trait and committed the crime in question. *See State v. Grubb*, 111 Ohio App.3d 277 (2d Dist.1996). It does not appear here, though, that the state was trying to elicit character testimony from Mona. Rather, without any real

prompting, she voluntarily testified that Clinger is not a violent person, that is, to put it positively, he has a peaceful character. Mona's testimony opened the door for the state to present rebuttal character evidence on this particular trait.

{¶20} The prosecutor's rebuttal began by asking Mona about Clinger's prior domestic-violence conviction. That he had a prior conviction for domestic violence was not news. The jury already knew this fact from earlier evidence presented by the state (i.e., Deputy Boyd's testimony and the journal entry of conviction). What Mona's testimony added was the detail that the victim of that prior domestic violence offense had been Mona herself. This prior conviction was relevant, as the offense of domestic violence is an offense of violence. *See* R.C. 2901.01(A)(9)(a). The fact that Clinger had been convicted for domestic violence conflicts with Mona's characterization of him as nonviolent, and the evidence was not unfairly prejudicial. Clinger's prior conviction for domestic violence was relevant to the character trait at issue and admissible.

{¶21} The other prior crimes that the prosecutor asked Mona about—leaving the scene of an accident, robbery, tampering with evidence, sale of counterfeit controlled substances, theft, forgery, aggravated possession of drugs, possession of heroin, and trespass in a habitation—were not relevant to the specific character trait at issue. None of these offenses suggest that Clinger has a propensity for violence. Therefore, the evidence of these convictions was not admissible under Evid.R. 404.

{¶22} The state contends that the evidence was ultimately admissible under Evid.R. 609 because Clinger himself testified. Rule 609 governs the admission of prior convictions for the purpose of impeaching the accused and generally provides that evidence that the accused has been convicted of a crime is admissible "if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 609(A)(2). Evidence that the accused has

been convicted of a crime involving "dishonesty or false statement" is routinely admissible. Evid.R. 609(A)(3). Accordingly, Clinger's prior conviction for forgery would likely be admissible and perhaps the conviction for tampering with evidence. It is possible that after weighing the probative value against the danger of unfair prejudice the others would be admissible too.

{¶23} In the end, though, we find that any error in the admission of the prior-conviction evidence elicited from Mona was harmless. "'Error in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction.'" *Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, at ¶ 177, quoting *State v. Lytle*, 48 Ohio St.2d 391 (1976), paragraph three of the syllabus, *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978). "[A]n improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 32.

{¶24} In this case, the properly admitted evidence of Clinger's guilt is overwhelming, as we will discuss further in our review of the first assignment of error. Also, other testimony was admitted without objection that shows Clinger had prior convictions. Deputy Boyd testified that Clinger has "a history of fleeing and resisting arrest." Clinger himself, on both direct and cross-examination, talked about the details of his prior domestic violence conviction. In addition, he referred to having "ten misdemeanor cases" against him at the time of that conviction. There was also other testimony showing that Clinger was not a peaceful person. Deputy Boyd testified that Marie had told him that "Cale has physically harmed her [Mona] in the past," that "[s]he was concerned for Mona's safety," and that "Cale had destroyed a bunch of things in the camper that belonged to her [Marie]."

{¶25} The sum of the evidence proves that Clinger shoved Marie, and it would have

done so even if the prosecutor had never mentioned Clinger's other prior convictions at trial. Any error in the admission of Mona's prior-conviction testimony was harmless given the overwhelming evidence of Clinger's guilt.

{¶26} Lastly, Clinger contends that the trial court improperly instructed the jury about the prior-conviction evidence. The instruction to which he refers is this one: "Now, the evidence was received that the Defendant had previously been convicted of Domestic Violence. That evidence was received because a prior conviction is an element of the offense charged. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character." This instruction is actually more restrictive regarding the use of the prior-conviction evidence than it should be. Any error in the instruction favors Clinger and is therefore harmless.

{¶27} The second assignment of error is overruled.

### B. Sufficiency and weight of the evidence

{¶28} Assignment of Error No. 1:

{¶29} HIS CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND LEGALLY INSUFFICIENT.

{¶30} In his first assignment of error, Clinger argues that the evidence supporting his conviction is insufficient and that the conviction is against the manifest weight of the evidence. Specifically, he challenges the evidence that he physically harmed Marie.

{¶31} An appellate court reviewing whether sufficient evidence supports a defendant's conviction must ask whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In contrast, "[t]o evaluate a manifest-weight claim, we must review the entire record, weigh the evidence and all reasonable inferences,

and consider the credibility of all the witnesses." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 328, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). The court must decide "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶32} In this case, the state had to prove that Clinger "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." R.C. 2919.25(A). The state sought to show that he had shoved his aunt, Marie, to the ground. Clinger's argument is that the people involved in the incident and the only ones who witnessed it— himself, Marie, and Mona—all testified that he did not shove her.

{¶33} Deputy Boyd testified that Marie told him that Clinger had shoved her. The jury heard Marie herself tell the deputy this when the prosecutor played the recording of her interview with the deputy. Tellingly, during the interview with Deputy Body, Mona, who there is no reason to doubt was of sound mind, never once disputed Marie's claim that Clinger had shoved her to the ground. The jury then heard Clinger try to persuade Mona to get Marie not to press charges and to recant her accusation. The jury heard Clinger and Mona conspire together to have Marie say instead that she had tripped on a rug and that, because of the chemotherapy, it was not until later that she remembered what had happened. The jury also heard that Marie wrote a letter recanting her accusation for exactly these reasons.

{¶34} The evidence supporting Clinger's conviction is sufficient. Weighing the evidence and considering the credibility of the witnesses, we find the jury did not lose its way in resolving the conflicts between Marie's and Mona's original claim that Clinger pushed Marie and their later claim that he did not. This is not the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting

*Martin*, 20 Ohio App.3d at 175.

{¶35} The first assignment of error is overruled.

**C. Sentence**

{¶36} Assignment of Error No. 3:

{¶37} THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED TO THE PREJUDICE OF APPELLANT IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT IMPOSED A MAXIMUM SENTENCE OF INCARCERATION.

{¶38} In the third and final assignment of error, Clinger argues that the trial court failed to make findings under R.C. 2929.13. In addition, he argues that he should not have received the maximum sentence, given the minor injuries that Marie sustained and the lack of any serious aggravating circumstances.

{¶39} R.C. 2953.08(G) defines the standard of review for felony sentencing appeals. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 21. R.C. 2953.08(G)(2) states that an appellate court may vacate or modify a felony sentence only if it "determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. "A felony sentence is not clearly and convincingly contrary to law if the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible sentencing range." (Citation omitted.) *State v. Petersen*, 12th Dist. Clermont No. CA2016-11-074, 2017-Ohio-6940, ¶ 8. "Although a court imposing a felony sentence must consider the purposes of felony sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12, 'neither R.C. 2929.11 nor 2929.12 requires [the] court to make any specific factual findings on the record.'" *State v. Bryant*, Slip Opinion No. 2022-Ohio-1878, ¶ 20,

quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 20.

{¶40} R.C. 2929.13(B)(1)(a) pertinently states that if an offender is convicted of a fourth-degree felony "that is not an offense of violence," and if certain conditions apply, the trial court must sentence the offender to community control. Clinger was convicted of domestic violence as a fourth-degree felony. Domestic violence is, as its name suggests, an "offense of violence." *See* R.C. 2901.01(A)(9)(a). Therefore, R.C. 2929.13 does not apply, and the trial court did not need to make any findings under the statute.

{¶41} Before imposing sentence, the trial court stated that it had reviewed the pre-sentence investigation report and the sentencing memoranda submitted by Clinger and the state. The record shows that the court considered the two felony-sentencing statutes, R.C. 2929.11 and 2929.12. A prison term of 18 months is within the statutory range. *See* R.C. 2929.14(A)(4). "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. In particular, R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry[.]" *Jones* at ¶ 42. Our review need go no further. There are no unsupported statutory findings, and the sentence is not contrary to law.

{¶42} The third assignment of error is overruled.

### III. Conclusion

{¶43} Having overruled all three assignments of error presented, appellant's domestic violence conviction is affirmed.

PIPER, P.J., and S. POWELL, J., concur.